WYREMBELSKI v CITY OF ST CLAIR SHORES

Docket No. 178928. Submitted April 17, 1996, at Detroit. Decided August 2, 1996, at 9:10 A.M.

Gordon H. and Sandy Wyrembelski brought an action in the Macomb Circuit Court against the City of St. Clair Shores, alleging negligence relating to Mr. Wyrembelski's injury at an ice hockey arena owned and operated by the city. At the time of his injury, Mr. Wyrembelski was playing in a hockey league game organized through USA Hockey by JMP Enterprises, which leased ice time at the arena from the city. Before his injury, Mr. Wyrembelski had signed a form that released USA Hockey, its affiliates, their sponsors, event organizers, and officials from any liability. The court, Mary A. Chrzanowski, J., granted summary disposition for the city, ruling that the action was barred by the release. The plaintiffs appealed.

The Court of Appeals *held*:

1. The trial court erred in determining that the city was an affiliate of USA Hockey for purposes of the release. The city's connection to USA Hockey in terms of hosting tournaments was an insignificant relationship and cannot lead to a conclusion that the city and USA Hockey were affiliates.

2. A statement and an ex parte order by the trial judge, which the plaintiffs claim form a basis for the trial judge's disqualification, do not meet the threshold necessary for disqualification.

Reversed and remanded for further proceedings.

RELEASE — SUMMARY DISPOSITION — SCOPE OF RELEASE.

Summary disposition of a plaintiff's complaint is proper where there exists a valid release of liability between the parties; a release of liability is valid if it is fairly and knowingly made; the scope of the release is governed by the intent of the parties as it is expressed in the release; if the language of the release is unambiguous, the intent of the parties is ascertained from the plain and ordinary meaning of the language of the release (MCR 2.116[C][7]).

*W. J. Brady & Associates, P.C.* (by *William J. Brady*), for the plaintiffs.

*Johnson, Rosati, Galica, Shifman, LaBarge, Aseltyne, Sugameli & Field, P.C.* (by *J. Russell LaBarge* and *Daniel P. Dalton*), for the defendant.

Before: Murphy, P.J., and Reilly , and C. W. Simon, Jr.,* JJ.

Per Curiam. Plaintiffs appeal as of right a circuit court order granting defendant's motion for summary disposition. We reverse.

Gordon Wyrembelski broke his leg while playing hockey at Olympia Ice Arena when his skate got caught in a "trough" or rut near the boards. The arena was owned and operated by defendant the city. The city leased ice time to JMP Enterprises, which organized and operated the league in which Gordon was playing at the time of the injury. JMP organized the league through USA Hockey. An individual membership registration form that Gordon signed before the injury occurred contains a section that releases "USA Hockey, its Affiliates, their sponsors, event organizers and officials from any liability therefor."

Plaintiffs sued the city for negligence. The city filed a motion for summary disposition pursuant to MCR 2.116(C)(7), (8), and (10). The trial court granted the city's motion on the basis of the release quoted in part above.

Plaintiffs contend that the trial court erred in determining that the city was an "Affiliate" of USA Hockey. We agree.

The city submitted an affidavit of the city's director of parks and recreation concerning the relationship between USA Hockey and the city. The affidavit

---

* Circuit judge, sitting on the Court of Appeals by assignment.

states that "JMP Enterprises leased ice time from the City of St. Clair Shores, and its adult hockey league, on the date of the accident," and that the city "neither organized nor operated" the league on which Gordon played. The affidavit also states, "The City of St. Clair Shores host [sic] events or tournaments from USA Hockey in the Amateur Hockey Association for all levels of play." The city argued, without supporting its assertions with evidence, that it "works closely with USA Hockey in hosting tournaments for all levels of play, from age 4 through age 30 and above. It must work with USA Hockey, or else it cannot participate in any regional, local[,] state or national tournaments."

The law relating to summary disposition based on a release can be summarized as follows:

> Summary disposition of a plaintiff's complaint is proper where there exists a valid release of liability between the parties. MCR 2.116(C)(7). A release of liability is valid if it is fairly and knowingly made. The scope of a release is governed by the intent of the parties as it is expressed in the release. [*Adell v Sommers, Schwartz, Silver & Schwartz, PC*, 170 Mich App 196, 201; 428 NW2d 26 (1988) (citations omitted).]
>
> If the text in the release is unambiguous, we must ascertain the parties' intentions from the plain, ordinary meaning of the language of the release. The fact that the parties dispute the meaning of a release does not, in itself, establish an ambiguity. A contract is ambiguous only if its language is reasonably susceptible to more than one interpretation. If the terms of the release are unambiguous, contradictory inferences become "subjective, and irrelevant," and the legal effect of the language is a question of law to be resolved summarily. [*Gortney v Norfolk & W R Co*, 216 Mich App 535, 540-541; 549 NW2d 612 (1996) (citations omitted).]

We conclude that the city was not entitled to summary disposition on the basis of the release. The fact that the city hosts USA Hockey tournaments does not make it an "Affiliate" of USA Hockey. The type of relationship necessary to be considered an affiliate can be gleaned from a review of cases in which the meaning of "affiliate" was at issue.

The Michigan cases that are on point provide examples of entities having relationships that were sufficiently close that this Court has agreed the entities were "affiliates." In *Frigid Food Products, Inc v Detroit*, 31 Mich App 402; 187 NW2d 916 (1971), this Court held that a company whose officers, board of directors, and stockholders were identical (with one exception) to another company was an "affiliate" for the purposes of MCL 211.9; MSA 7.9.[1]

In *Snite v Life Ins Co of North America*, 73 Mich App 207; 251 NW2d 300 (1977), this Court considered the meaning of "affiliate" in the context of an exclusion to a life insurance policy. The policy applied to losses resulting from travel or flight in any aircraft, except where the aircraft was owned by or leased " 'on behalf of the Policyholder [Grand Rapids Label] or any subsidiary or affiliate of such Policyholder.' " *Id.* at 209. The aircraft involved in the loss was owned by GRP, Ltd. This Court referred to the following facts in its discussion of whether GRP, Ltd. was an affiliate of Grand Rapids Label:

(1) GRP, Ltd. was incorporated approximately two weeks prior to the fatal accident; (2) GRP, Ltd. was the owner of

---

[1] Contrary to defendant's assertion, this Court noted, but did not adopt, the trial court's determination that "affiliated" means only "connected." *Id.* at 405.

the airplane; (3) the sole purpose of GRP, Ltd. was to make arrangements with Grand Rapids Label and its partner [Grand Rapids Forging] for the use of the plane; (4) 50 per cent of the stock of GRP, Ltd. was owned by Grand Rapids Label; (5) the president of Grand Rapids Label was also the president of GRP, Ltd. [*Id.* at 210.]

These cases support plaintiffs' view that the city is not an affiliate of USA Hockey merely by the fact that it hosts tournaments. However, we also examined cases from other jurisdictions to ascertain the expansiveness of the term.

In *Travelers Indemnity Co v United States*, 543 F2d 71 (CA 9, 1976), the Ninth Circuit Court of Appeals considered the meaning of the phrase "affiliated or associated" in the context of a subrogation clause in an insurance policy. Finding that the clause was ambiguous, the court attempted to interpret the clause in a manner consistent with the intentions of the parties. *Id.* at 75.

> [T]he terms "associated" and "affiliated" envision an intimate business relationship in which significant aspects of financial and managerial control of the insured and the affiliate or associate are integrated. More is required than common ownership and a limited sharing of facilities which aids each owner to pursue his independent and separate objectives. [*Id.* at 76.]

The court held that despite "overlapping or common ownership and control, and mutuality of interest in the Malin Substation," the entities were "separate," "independent," "not financially interrelated," and were pursuing "separate and distinct objectives." *Id.* Accordingly, the court held that the entities were not "affiliated or associated."

The court cited *In re Marine Sulphur Transport Corp*, 312 F Supp 1081 (SD NY, 1970), aff'd and modified on other grounds 460 F2d 89 (CA 2, 1972), in support of its determination. In that case, the court rejected the argument that "a simple and arm's length" contractual relationship between two corporations made them "affiliated and/or associated and/or allied." *Id.* at 1103.

*McCall v Cameron Offshore Boats, Inc*, 635 So 2d 263 (La App, 1994), was a case in which the scope of a release and the meaning of the term "affiliates" were at issue. The plaintiff entered into a compromise agreement that released her ex-husband, "his predecessors, affiliates, insurers, representatives, agents, successors, assigns and employees." The court concluded that Cameron Offshore Boats, Inc., was not within the scope of the release, despite the fact that the plaintiff's ex-husband was the sole shareholder of the corporation.

In *Precision Devices Corp v Intermedics, Inc*, 766 F Supp 666 (ND Ill, 1991), the issue was whether parent corporations of medical equipment manufacturers were the manufacturers' "affiliates" for the purpose of a sales commission agreement. The court, applying Texas law, found that the agreement was "capable of more than one meaning in light of the surrounding circumstances" and considered those circumstances to "aid in interpretation." *Id.* at 668. The court held:

> As the magistrate judge pointed out in both of her reports, there is nothing to suggest that the parties intended for commissions to be paid on products sold by parent companies Such an expansive interpretation cannot be extracted from [sales commission agreement] or the circumstances surrounding its execution. [*Id.* at 669.]

In *Baker v Fenley*, 233 Mo App 998, 1004; 128 SW2d 295 (1939), the court stated:

> It is unnecessary for us to attempt the difficult task of giving a full and complete definition of either the words "subsidiary" or "affiliate," as they are used in a commercial sense. We do think that in order for such a relationship to exist that one body or person should have a financial interest, at least, in the other's business, or a voice in its management, to be either an affiliate or a subsidiary.

The city has not cited, and we have not located, a case in which two entities with a relationship as insignificant as that between the city and USA Hockey have been found to be affiliates. Two cases cited by the city, *Dombrowski v City of Omer*, 199 Mich App 705; 502 NW2d 707 (1993), and *Skotak v Vic Tanny Int'l, Inc*, 203 Mich App 616; 513 NW2d 428 (1994), are instructive inasmuch as they provide examples of the type of all-encompassing language that USA Hockey could have employed in its release to achieve the result sought by the city in this case.

In light of our conclusion, we need not address the merits of plaintiffs' argument that the release was not fairly and knowingly executed. In regard to plaintiffs' claim that this Court should order the trial judge to disqualify herself, we are not persuaded that the statement made by the judge and the ex parte order that was entered are sufficient to meet the threshold necessary for disqualification. *Crampton v Dep't of State*, 395 Mich 347; 235 NW2d 352 (1975).

The trial court's order granting the city's motion for summary disposition is reversed, and the case is

remanded for further proceedings. We do not retain jurisdiction.