HOFFNER v LANCTOE

Docket No. 292275. Submitted October 12, 2010, at Marquette. Decided
   November 2, 2010, at 9:05 a.m.

   Charlotte Hoffner brought a personal injury action in the Gogebic
      Circuit Court against Fitness Xpress (an exercise facility), Mousie,
      Incorporated (which operated Fitness Xpress), Pamela Mack and
      Tiffani Aho (who owned Mousie), and Richard and Lori Lanctoe
      (who owned the building and property where Mousie leased space
      for Fitness Xpress) after she slipped and fell on an icy sidewalk in
      front of the facility. Blue Cross Blue Shield of Michigan, Hoffner's
      insurer, intervened as a party plaintiff. Defendants moved for
      summary disposition, arguing that Aho, Mack, and Fitness Xpress
      should be dismissed from the suit because they did not have
      possession and control of the sidewalk outside the facility, that all
      defendants had been released from liability by a release Hoffner
      signed as part of her membership with Fitness Xpress, and that
      defendants owed no duty to Hoffner because the ice was an open
      and obvious hazard that was avoidable. The court, Joseph D.
      Zeleznik, J., found there were genuine issues of material fact
      concerning whether Fitness Xpress, Mack, and Aho could be held
      responsible as possessors of the premises where Hoffner fell, the
      scope of the release, and the nature of the icy condition that led to
      Hoffner's injury. Defendants appealed.

      The Court of Appeals *held*:

      1. The trial court erred by finding that a genuine question of
   material fact existed concerning whether Fitness Xpress, Mack,
   and Aho possessed the premises where Hoffner fell. Premises
   liability is based on both possession and control over the land
   because the person having possession and control is normally best
   able to prevent harm to others. Possession for purposes of pre-
   mises liability depends on the actual exercise of dominion and
   control over the property. The evidence included Fitness Xpress's
   rental contract, which expressly provided that the Lanctoes were
   responsible for snow removal for the sidewalks. There were several
   other businesses in the same building that used the same sidewalk
   and, although Fitness Xpress occasionally salted the sidewalk, it
   had not assumed the duty of doing so, nor had it taken possession

of the sidewalk. Thus, the evidence did not support a conclusion that Fitness Xpress, Mack, and Aho exercised dominion and control over the sidewalk. Those defendants were entitled to summary disposition as a matter of law.

2. The trial court did not err by finding that questions of material fact existed concerning the effect of the release signed by Hoffner. A release must be interpreted according to its plain and ordinary meaning. If the contractual language is clear, construction of the release is a question of law for the court. However, if the release is subject to two reasonable interpretations, factual development is necessary to determine the intent of the parties. The release could reasonably have been interpreted broadly, as releasing all claims, including a slip and fall, or narrowly, as releasing only claims related to the exercise and weight loss activities occurring at Fitness Xpress. Because the release was ambiguous, summary disposition was not appropriate.

3. The trial court correctly denied summary disposition on the issue of premises liability because the icy condition was effectively unavoidable. While a landowner's duty of care to invitees does not generally require the removal of open and obvious dangers, a landowner has a duty to protect invitees from an open and obvious danger when special aspects of the condition make it unreasonably dangerous, that is, when the danger is effectively unavoidable or imposes a uniquely high likelihood of harm or severity of harm. A business owner cannot defend a claim by arguing that customers it has invited onto its premises technically had the option of declining the invitation and that the condition was therefore avoidable. Even though the ice in this case, which was at the facility's only customer entrance, was an open and obvious hazard, it was effectively unavoidable and therefore defendants had a duty to protect invitees from that hazard. There was no alternative route that Hoffner could have used to enter the facility, and because she had a contract with Fitness Xpress, she had been invited to enter the premises. Defendants could not avoid their duty of care owed to customers by arguing that Hoffner did not have to enter the facility.

Affirmed in part, reversed in part, and remanded.

1. NEGLIGENCE — PREMISES LIABILITY — PREMISES POSSESSOR — DUTY.

Premises liability is based on both possession and control over the land because the person having possession and control is normally best able to prevent harm to others; possession for purposes of premises liability depends on the actual exercise of dominion and control over the property; a person, however, may be under a legal

duty with respect to premises by voluntarily assuming a function that the person is not legally required to perform.

2. NEGLIGENCE — PREMISES LIABILITY — INVITEES — OPEN AND OBVIOUS DANGERS — SPECIAL ASPECTS.

   A landowner generally does not have a duty to remove open and obvious dangers, but a landowner does have a duty to protect invitees from an open and obvious danger when special aspects of the condition make it unreasonably dangerous, that is, when the danger is effectively unavoidable or imposes a uniquely high likelihood of harm or severity of harm; a business owner cannot defend a claim by arguing that customers it has invited onto its premises technically had the option of declining the invitation and that the condition was therefore avoidable.

*A. Dennis Cossi Law Office* (by *A. Dennis Cossi*) for Charlotte Hoffner.

*Dean & Pope, P.C.* (by *Michael K. Pope*), for Richard and Lori Lanctoe, Pamela Mack, Tiffani Aho, and Mousie, Incorporated.

Before: MURPHY, C.J., and BECKERING and M. J. KELLY, JJ.

PER CURIAM. Defendants appeal by leave granted an order of the trial court denying their motion for summary disposition pursuant to MCR 2.116(C)(7) and (10) in this premises liability claim. The trial court found that there were genuine issues of material fact concerning whether certain defendants could be held responsible as "possessors" of the premises where plaintiff Charlotte Hoffner fell, the scope of a release signed by Hoffner, and the nature of the condition on defendants' premises that led to Hoffner's injury. We affirm in part, reverse in part, and remand.

On January 28, 2006, Hoffner slipped and fell on ice on the sidewalk in front of the entrance to an exercise

facility, defendant Fitness Xpress.[1] Hoffner had joined Fitness Xpress approximately two weeks before her fall and was entering the facility at its only customer entrance. Hoffner reported that she saw the sidewalk had "glare ice" on it as she approached from her vehicle, but she believed that because she was wearing good boots and it was a short distance, she could safely walk across it to enter Fitness Xpress.

### I. POSSESSION AND CONTROL OF THE PREMISES

Defendants argue that Aho, Mack, and Fitness Xpress could not properly be included as defendants because they did not have possession and control of the sidewalk outside the exercise facility where Hoffner fell. We agree.

A trial court's determination of a motion for summary disposition is reviewed de novo. *Ormsby v Capital Welding, Inc*, 471 Mich 45, 52; 684 NW2d 320 (2004). When reviewing a motion brought under MCR 2.116(C)(10), the court considers the affidavits, depositions, pleadings, admissions, and other evidence submitted by the parties in the light most favorable to the nonmoving party. *Rose v Nat'l Auction Group*, 466 Mich 453, 461; 646 NW2d 455 (2002). Summary disposition is appropriate if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law. *Id.*

"[T]he invitee status of a plaintiff, alone, does not create a duty under premises liability law unless the invitor has possession and control of the premises on which the plaintiff was injured." *Orel v Uni-Rak Sales Co,*

---

[1] Fitness Xpress was operated by defendant Mousie, Incorporated, which was owned by defendants Pamela Mack and Tiffani Aho. Defendants Richard and Lori Lanctoe owned the building and property where Mousie, Incorporated, leased space for Fitness Xpress.

*Inc*, 454 Mich 564, 565; 563 NW2d 241 (1997). In the context of premises liability law, possession has been defined as " '[t]he right under which one may exercise control over something to the *exclusion of all others.*' " *Derbabian v S & C Snowplowing, Inc*, 249 Mich App 695, 703; 644 NW2d 779 (2002), quoting Black's Law Dictionary (7th ed). Control has been defined as " 'exercis[ing] restraint or direction over; dominate, regulate, or command,' " *Derbabian*, 249 Mich App at 703, quoting *Random House Webster's College Dictionary* (1995), p 297, and as " 'the power to . . . manage, direct, or oversee,' " *Derbabian*, 249 Mich App at 703-704, quoting Black's Law Dictionary (7th ed). While possession and control are certainly indicative of title ownership of land, ownership of the land alone is not dispositive because these possessory rights can be " 'loaned' " to another. *Orel*, 454 Mich at 568, quoting *Merritt v Nickelson*, 407 Mich 544, 552-553; 287 NW2d 178 (1980). The question is whether Aho, Mack, and Fitness Xpress, as leaseholders of an area inside the Lanctoes' building, had possession and control of the sidewalk outside their facility.

In *Merritt*, 407 Mich at 552, quoting 2 Restatement Torts, 2d, § 328 E, p 170, the Court defined "possessor of land" as follows:

> "(a) a person who is in occupation of the land with intent to control it or
>
> "(b) a person who has been in occupation of land with intent to control it, if no other person has subsequently occupied it with intent to control it, or
>
> "(c) a person who is entitled to immediate occupation of the land, if no other person is in possession under Clauses (a) and (b)."

See also *Derbabian*, 249 Mich App at 702. Premises liability is based on both possession and control over the land because the person having such possession and

control is normally best able to prevent harm to others. *Id.* at 705, citing *Merritt*, 407 Mich at 552.

Paragraph 19 of the lease between the Lanctoes and Fitness Xpress specifically addressed who was responsible for the care of the sidewalk and parking lot:

> LANDLORD shall be responsible for removal of snow from the leased facility as LANDLORD deems necessary, including from the roof, sidewalks, and parking lots. LANDLORD shall be responsible, and shall hold TENANT harmless for, any and all injuries, accidents, or other liability related to [its] failure to maintain and remove snow according to [its] obligations under this Lease.

Additionally, evidence was presented that defendants understood that the Lanctoes were responsible for the exterior areas of the premises, but Fitness Xpress had a bucket of salt that it used to help keep the sidewalk clear. There was evidence that the Lanctoes cleared snow and ice from the area later during the day of Hoffner's fall. The Lanctoes' building also housed several other businesses, including Lori Lanctoe's, which had customers entering the building using the sidewalk that fronted Fitness Xpress.

Plaintiffs argue that ¶ 19 of the lease specifically referred to the sidewalk as part of the "leased facility," thus establishing Fitness Xpress's duty to maintain the area. However, the lease specifically stated that Fitness Xpress was leasing "approximately 2000 square feet of floor space situated in the rental unit of a building." Plaintiffs also argue that Fitness Xpress exercised control over the parking lot and sidewalk for the purposes of parking customers' cars and entrance into the building. However, this use of the premises did not necessarily establish control over the area. As noted, there were several other businesses using the same building.

Plaintiffs also argue that Fitness Xpress assumed a duty by applying salt to the sidewalk at times. "A party may be under a legal duty when it voluntarily assumes a function that it is not legally required to perform," and once "a duty is voluntarily assumed, it must be performed with some degree of skill and care." *Zychowski v A J Marshall Co, Inc,* 233 Mich App 229, 231; 590 NW2d 301 (1998). However, the evidence did not demonstrate that the Fitness Xpress defendants assumed care of the sidewalk from the Lanctoes, considered the sidewalk their responsibility, or endangered customers by intermittently applying additional salt. A defendant can plow or salt a sidewalk without assuming a duty or taking possession or control over the sidewalk. *Devine v Al's Lounge, Inc,* 181 Mich App 117, 120; 448 NW2d 725 (1989).

Possession for purposes of premises liability depends on the actual exercise of dominion and control over the property. *Derbabian,* 249 Mich App at 704. The evidence here indicated that by contract, and by the actions and intent of the parties, Fitness Xpress, Mack, and Aho did not exercise dominion and control over the sidewalk. Therefore, they were not in the best position to prevent the kind of harm incurred by Hoffner and were not the possessors of the sidewalk. See *id.* at 702, 705. We thus find that the trial court erred by finding a genuine issue of material fact regarding whether Fitness Xpress, Aho, and Mack could be assigned liability for Hoffner's fall on the sidewalk, and those defendants were entitled to summary disposition as a matter of law. See *Rose,* 466 Mich at 461.

II. SCOPE OF HOFFNER'S RELEASE

Defendants also argue that a release of liability agreed to by Hoffner and Fitness Xpress as part of her membership contract precluded liability for all defendants for slip-and-fall accidents on the sidewalk. We

disagree. Summary disposition of a plaintiff's complaint
is proper when there exists a valid release of liability
between the parties. MCR 2.116(C)(7). In reviewing a
motion for summary disposition based on a release
barring a claim, this Court considers the affidavits,
depositions, admissions, and other documentary evi-
dence to determine whether the movant is entitled to
summary disposition as a matter of law. *Tarlea v
Crabtree*, 263 Mich App 80, 87-88; 687 NW2d 333
(2004). The evidence is viewed in the light most favor-
able to the nonmoving party, and all legitimate infer-
ences in favor of the nonmoving party are drawn.
*Jackson v Saginaw Co*, 458 Mich 141, 142; 580 NW2d
870 (1998). A release of liability is valid if it is fairly and
knowingly made. *Wyrembelski v St Clair Shores*, 218
Mich App 125, 127; 553 NW2d 651 (1996).

"A contract must be interpreted according to its plain
and ordinary meaning." *Holmes v Holmes*, 281 Mich App
575, 593; 760 NW2d 300 (2008). If contractual language is
clear, construction of the contract is a question of law for
the court. *Id.* at 594. A contract is not ambiguous if it
fairly produces only one interpretation, even if it is inart-
fully worded or clumsily arranged. *Id.*

Given our finding that Fitness Xpress, Aho, and
Mack were entitled to summary disposition for lack of
possession and control of the premises where Hoffner
fell, we focus our analysis on the applicability of the
release as it pertains to the Lanctoes. Arguably, the
Lanctoes could potentially have been released from
liability by the language of the contract, even though
they were not specifically named in the release, in light
of the broad language to release and forever discharge
"all others" from liability.[2] However, in light of the fact

---

[2] As our Supreme Court recently set forth in *Shay v Aldrich*, 487 Mich
648, 675-676; 790 NW2d 629 (2010),

that we agree with the trial court that the scope of activities released by the contract is ambiguous, and thus agree that summary disposition was not appropriate, we need not now decide this issue.

The indemnification portion of the Fitness Xpress membership contract provides, in relevant part:

> INDEMNIFICATION: Member . . . hereby agrees to indemnify, defend and hold harmless, Fitness Xpress, a division of Mousie Inc. and its officers, employees, contractors, agents, successors or assigns from any and all claims for liability against [sic] without limitation, including . . . expenses incurred either directly or indirectly by reason of, resulting from, or associated in anyway [sic] without limitation, with the Membership and/or Fitness Xpress. Member also acknowledges that she has reviewed and executed

---

to determine whether an unnamed party is released from liability by broad or vague release language, the party's status as a third-party beneficiary must be established by an objective analysis of the release language. However, traditional contract principles continue to apply to the release, and courts may consider the subjective intent of the named and unnamed parties to the release under certain circumstances, such as when there is a latent ambiguity. The third-party-beneficiary statute indicates that the Legislature intended to allow parties who are direct beneficiaries to sue to enforce their rights, but the statute expressly states that third-party beneficiaries have only the "same right" to enforce as they would if the promise had been made directly to them. MCL 600.1405. That is, the statute creates a cause of action, but it is not intended to afford third parties greater rights than they would have if they had been the original promisee.

The *Shay* Court also noted the following:

> [A] latent ambiguity has been described as one that " 'arises not upon the words of the will, deed or other instrument, as looked at in themselves, but upon those words when applied to the object or to the subject which they describe.' " " 'And where, from the evidence which is introduced, there arises a doubt as to what party or parties are to receive the benefit [of a contract], parol evidence is admissible to determine such fact.' " [*Id*. at 671-672 (citations omitted; second alteration in *Shay*).]

the Waiver of Liability attached hereto as part of this agreement prior to engaging in any physical activities or programs at Fitness Xpress according to the RELEASE below.[3]

Nothing in the indemnification provision related to the Lanctoes; however, the release portion of the contract contained a broader disclaimer, which provided, in pertinent part:

> RELEASE: I, the member or participant . . . , understand and agree that fitness activities including weight loss may be hazardous activities and I . . . should contact a healthcare professional or doctor before beginning any new activities or weight loss program. I am voluntarily participating in these activities and using the Fitness Xpress, (Mousie Inc.) facilities and equipment, at my sole risk, with full knowledge of the dangers involved. I hereby agree to expressly assume and accept any and all risks of injury or death related hereto.
>
> In consideration of being allowed to participate in the activities and programs of Fitness Xpress (Mousie, Inc.) and use of its facilities and equipment, in the addition of any payment of any fees or charges, I do hereby waive, release and forever discharge Fitness Xpress, Mousie Inc. its officers, agents, employees, representatives, executors, *and all others* from any responsibilities or liabilities for any injuries or damage resulting from my and/or my daughter(s) [sic], or my belongings, including those caused by any negligent act or commission, in connection with participation/membership or use of equipment at Fitness Xpress and Mousie Inc. [Emphasis added.]

If the text in the release is unambiguous, we must ascertain the parties' intentions from the plain, ordinary meaning of the language of the release. *Genesee Foods Servs, Inc v Meadowbrook, Inc,* 279 Mich App 649, 655; 760 NW2d 259 (2008).

---

[3] No waiver of liability form has ever been produced.

The Lanctoes argue that the release portion of the contract applied to their liability for Hoffner's slip and fall on the ice before entering the exercise facility because the accident was included in the contract's language releasing "all others from any responsibilities or liabilities for any injuries," including those caused by "any negligent act or commission, in connection with participation/membership" at Fitness Xpress. The contract's use of broad language releasing "all others" could potentially be interpreted as including any claim that Hoffner could bring against the Lanctoes. See *Shay*, 487 Mich at 675-676. Further, a release including language such as " 'any and all claims, demands, damages, rights of action, or causes of action, . . . arising out of the Member's . . . use of the . . . facilities' " can express an intention to disclaim liability for all negligence. *Skotak v Vic Tanny Int'l, Inc*, 203 Mich App 616, 619; 513 NW2d 428 (1994). However, the contract at issue released liability for claims "in connection with participation/membership or use of equipment at Fitness Xpress and Mousie Inc." and stated that Hoffner was "using the Fitness Xpress (Mousie Inc.) facilities and equipment, at my sole risk." This language provided an apparent limitation of liability related to the actual use of the fitness facility and its equipment, not liability encountered en route to the fitness center. Plaintiffs also maintain that the language "release and forever discharge . . . from any responsibilities or liabilities for any injuries or damage resulting from my and/or my daughter(s) [sic], or my belongings, including those caused by any negligent act or commission, in connection with participation/membership or use of equipment" was ambiguous concerning which actions triggered the release.

The trial court found the contract ambiguous and stated that a jury could conclude that the release applied to all activities or only to some activities. The court commented that the release seemed to pertain to

the nature of the business, i.e., fitness activities and equipment, rather than falling on a sidewalk outside the exercise facility. The language of the contract could reasonably be interpreted broadly, to include a slip and fall while attempting to enter Fitness Xpress, or narrowly, to include only activities related to exercise and weight loss that were specifically discussed in the release portion of the contract. "If the contract is subject to two reasonable interpretations, factual development is necessary to determine the intent of the parties and summary disposition is therefore inappropriate." *Meagher v Wayne State Univ*, 222 Mich App 700, 722; 565 NW2d 401 (1997). Therefore, the trial court did not err by denying summary disposition to defendants on this issue.

### III. OPEN AND OBVIOUS DANGER DOCTRINE

Defendants also argue that plaintiffs' claim should be barred by application of the open and obvious danger doctrine. Hoffner was an invitee: one who is invited onto the land for a commercial purpose. See *Stitt v Holland Abundant Life Fellowship*, 462 Mich 591, 597; 614 NW2d 88 (2000). "The landowner has a duty of care, not only to warn the invitee of any known dangers, but the additional obligation to also make the premises safe, which requires the landowner to inspect the premises and, depending upon the circumstances, make any necessary repairs or warn of any discovered hazards." *Id.*

However, this duty does not generally encompass removal of open and obvious dangers "where the dangers are known to the invitee or are so obvious that the invitee might reasonably be expected to discover them." *Riddle v McLouth Steel Prod Corp*, 440 Mich 85, 96; 485 NW2d 676 (1992). Whether a danger is open and

obvious depends on whether it is reasonable to expect that an average person with ordinary intelligence would have discovered it upon casual inspection. *Joyce v Rubin*, 249 Mich App 231, 238; 642 NW2d 360 (2002). In this case, it is not disputed that the ice in front of the entrance to the exercise facility posed an open and obvious danger. Hoffner testified that she saw that the sidewalk was covered by "glare ice" as she approached it from the parking lot, but thought that she could cross it safely.

Defendants argue that the trial court erred by finding that the ice could reasonably be found to constitute a special aspect that made the condition unreasonably dangerous because it was effectively unavoidable. If special aspects of a condition make even an open and obvious risk unreasonably dangerous, the land possessor has a duty to undertake reasonable precautions to protect invitees from that risk. *Lugo v Ameritech Corp, Inc*, 464 Mich 512, 517; 629 NW2d 384 (2001). A special aspect exists when the danger, although open and obvious, is effectively unavoidable or imposes a uniquely high likelihood of harm or severity of harm. *Id.* at 518-519. In considering what constitutes a special aspect, a court must evaluate the objective nature of the condition of the premises, not the subjective degree of care used by the plaintiff or other idiosyncratic factors related to the particular plaintiff. *Bragan v Symanzik*, 263 Mich App 324, 332; 687 NW2d 881 (2004), citing *Lugo*, 464 Mich at 523-524.

Defendants argue that the ice was avoidable because Hoffner did not have to attempt to enter the exercise facility and voluntarily confront the ice.[4] In *Lugo*, 464

---

[4] Defendants argued at the hearing of this matter that as an alternative to entering Fitness Xpress over the glare ice blocking the only entrance, Hoffner could have called Fitness Xpress and demanded that it salt the

Mich at 518, the Court described a hypothetical ex-
ample of standing water at the only exit of a commercial
building as being "effectively unavoidable" because no
alternative route is available. Defendants note that the
*Lugo* example considered a plaintiff who could not exit,
rather than a plaintiff who could choose not to enter.
Defendants assert that a danger is not unavoidable if
the plaintiff is not required to confront the hazard.

However, in *Robertson v Blue Water Oil Co*, 268 Mich
App 588, 590-591; 708 NW2d 749 (2005), this Court
described testimony concerning an "unusually severe
and uniform ice storm that covered the entire area
surrounding defendant's [gas] station," causing what
was described as extremely icy conditions in the park-
ing lot where the plaintiff slipped and fell as he walked
from the pump at which he had paid for fuel to the
station's convenience store where he wished to pur-
chase windshield washer fluid and coffee. The defen-
dant argued that the condition was avoidable because
the plaintiff could have gone to a different service
station to make his purchases of fuel, coffee, and
windshield washer fluid, but this Court concluded,
emphasizing that the defendant had invited the plain-
tiff to the premises as a business, that the ice was
unavoidable. *Id.* at 593-594. The *Robertson* Court rea-
soned:

> Even if there were [available alternatives], the scope of
> the inquiry is limited to "the objective nature of the
> condition of the premises at issue." Therefore, the only
> inquiry is whether the condition was effectively unavoid-
> able *on the premises.* Here, there was clearly no alternative,
> ice-free path from the gasoline pumps to the service sta-

---

sidewalk, after which she would presumably have waited for the salt to
take effect. Such an alternative notably contradicts defendants' argu-
ment that Fitness Xpress had no possession or control over the sidewalk
and, thus, no obligation to salt it.

tion, a fact of which defendant had been made aware several hours previously. The ice was effectively unavoidable. [*Id.* (citations omitted).]

Moreover, the *Robertson* Court dismissed the idea that the defendant could avail itself of the argument that the condition was avoidable simply because the plaintiff could find another business to patronize, holding:

> Finally, and more significantly, plaintiff was a paying customer who was on defendant's premises for defendant's commercial purposes, and thus he was an invitee of defendant. See *Stitt v Holland Abundant Life Fellowship*, 462 Mich 591, 596-598, 603-604; 614 NW2d 88 (2000). As our Supreme Court noted, "invitee status necessarily turns on the existence of an 'invitation.' " *Id.* at 597-598. Defendant's contention that plaintiff should have gone elsewhere is simply inconsistent with defendant's purpose in operating its gas station. The logical consequence of defendant's argument would be the irrational conclusion that a business owner who invites customers onto its premises would never have any liability to those customers for hazardous conditions as long as the customers even technically had the option of declining the invitation.
>
> \* \* \*
>
> Even if the record showed that plaintiff was aware of a realistic, safe alternative location to purchase his fuel, coffee, and windshield washer fluid, where defendant has invited the public, and by extension plaintiff, onto its premises for commercial purposes, we decline to absolve defendant of its duty of care on that basis. To do so would be disingenuous. Therefore, we conclude that the trial court appropriately denied defendant's motions. [*Id.* at 594-595 (emphasis omitted).]

Further, even in the hypothetical example of standing water blocking the only exit to a building described in *Lugo*, 464 Mich at 518, the Supreme Court apparently would not have absolved the theoretical defendant of

responsibility when the theoretical plaintiff chose to leave the building and confront an unavoidable danger, rather than choosing to avoid the danger by waiting until the water had cleared.

In reaching its decision that summary disposition was inappropriate, the trial court noted that Hoffner had contracted to use Fitness Xpress and may have needed to use it for health reasons. Because there was only one customer entrance to the facility that was fronted by the icy sidewalk, "the objective nature of the condition of the premises at issue" reveals that the icy sidewalk was effectively unavoidable as it related to the use of the premises. See *id.* at 523-524; *Robertson*, 268 Mich App at 594-595. There was no alternative route Hoffner could have taken in order to enter the exercise facility.[5] Additionally, Hoffner was an invitee by virtue of her contract with Fitness Xpress, and the *Robertson* Court held that it would be disingenuous to relieve defendants of their duty of care under similar circumstances. See *Robertson*, 268 Mich App at 595. Therefore, we conclude that the trial court appropriately denied defendants' motion on this ground.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

---

[5] We find unconvincing defendants' argument at the hearing that if plaintiff had approached the glare ice from a different angle she might have had more success.