*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

MODERN INDUSTRIES, INC., LIVINGSTON
COUNTY CONCRETE, INC., TWO THIRDS
INVESTMENTS, LLC, and RONALD LAMMY,

        Plaintiffs-Appellants,

v

OXFORD BANK CORPORATION,

        Defendant-Appellee.

UNPUBLISHED
January 27, 2022

No. 356456
Oakland Circuit Court
LC No. 2019-178262-CB

Before: SAWYER, P.J., and SERVITTO and RICK, JJ.

PER CURIAM.

Plaintiffs appeal as of right the trial court's orders granting summary disposition in favor of defendant. We affirm.

## I. FACTS AND PROCEDURAL HISTORY

This case arises from a contract dispute regarding commercial loans issued to plaintiffs by defendant. Before December 2017, Ronald Lammy was the sole owner of Modern Industries, Inc. (Modern), and co-owner of Livingston County Concrete, Inc. (Livingston). In 2017, Michael T. Horan, Lammy's business partner and Livingston's other co-owner, agreed to sell his 50% ownership interest in Livingston to Lammy for $2,250,000, if the transaction closed before December 31, 2017. Accordingly, in August 2017, Lammy engaged with defendant to fund the buyout of Livingston and refinance the debt of Modern. After a series of loan proposals, Lammy and defendant agreed on two loans: the Livingston loan, to buy out Horan's ownership interest, and the Modern loan, to refinance Modern's debts.

The Livingston loan consisted of two promissory notes: a five-year note for $1,492,500 and a three-year note for $1,012,000. The payment terms for this loan required "equal monthly installments of principal and interest[.]" Additionally, the loan documents corresponding to the Livingston loan included a release provision, stating "Borrower waives, releases and affirmatively agrees not to allege or otherwise pursue any and all . . . claims . . . it may have, or claim to have[,] . . . against Bank . . . from the date of the Borrower's first contact with Bank up to the date

of this Agreement." The parties closed on the Livingston loan in December 2017. The Modern loan consisted of one Small Business Administration (SBA) loan for $1,794,000. The payment terms for this loan stated: "Borrower must pay one payment of interest only on the disbursed principal balance one month from the month this Note is dated," and then "pay principal and interest payments" each month thereafter. Unlike the Livingston loan, the Modern loan did not contain a release provision in the loan documents. The parties closed on the Modern loan in January 2019.

After closing the Livingston loan, Lammy objected to the changes in the amount of the notes and the payment terms of the Modern loan from the initial September 2017 proposal. In the initial proposal, the Livingston loan amounted to $2,013,930 for the five-year note and $786,000 for the three-year note, and the Modern loan amounted to $1,995,780. The estimated monthly payment provision for the Modern loan stated: "Twelve months of interest only payments followed by . . . [108] monthly principal and interest payments." At the closing of the Modern loan, Lammy also objected to the proposed distribution and cash flow terms. It is disputed whether defendant promised Lammy it would modify the loan documents accordingly if Lammy proceeded with closing the Modern loan. After closing the Modern loan, several meetings were held "in an attempt to reconstruct the loans however . . . it was impossible to accomplish in an orderly fashion without [p]laintiff[s'] business being completely destroyed." As a result, Lammy sought refinancing with another lender and repaid the loans to defendant in November 2018.

Plaintiffs thereafter filed a complaint against defendant, alleging defendant negligently engaged in self-dealing and unilaterally changed the terms of the loans contrary to the parties' agreement. Plaintiffs also alleged defendant breached its fiduciary duty to plaintiffs by failing to properly distribute the Modern loan proceeds to plaintiffs, rather than itself. Further, plaintiffs alleged defendant engaged in constructive fraud and misrepresentation by waiting to disclose unilateral changes to the final loan documents until plaintiffs had no choice but to close on the loans.

Defendant moved for summary disposition under MCR 2.116(C)(7), MCR 2.116(C)(8), and MCR 2.116(C)(10). Defendant argued that plaintiffs' claims related to the Livingston loan were barred by the release provision contained within the loan documents and that plaintiffs' negligence claims were barred because the parties' relationship was governed by a contract, and not a distinct and separate tort duty. Defendant also argued plaintiffs' breach of fiduciary duty claim warranted dismissal because plaintiffs failed to establish the type of unique facts necessary to establish a fiduciary relationship beyond that of a lender-borrower, and that plaintiffs failed to plead fraud with specificity, as required under MCR 2.112(B)(1), and further failed to establish a genuine issue of material fact to support their claim.

The trial court denied defendant's motion regarding plaintiffs' claims of fraud and misrepresentation, but granted defendant's motion for summary disposition on the remainder of plaintiffs' claims. Specifically, the trial court reasoned the broad release language in the loan documents left "no question" that Livingston and Lammy agreed to release defendant from any claim related to the Livingston loan and thus dismissed all claims made by these plaintiffs pursuant to MCR 2.116(C)(7). The trial court determined plaintiffs' negligence claims failed under MCR 2.116(C)(8) because plaintiffs failed to establish a "separate and distinct" duty outside of any contractual duty between the parties and that their breach of fiduciary duty claim failed under MCR

2.116(C)(8) because plaintiffs did not establish a fiduciary duty between plaintiffs and defendant to support this claim. While the trial court acknowledged plaintiffs had not pleaded their fraud claim "with any particularity as required under MCR 2.112(8)(1) to survive summary disposition[,]" the trial court afforded plaintiffs the opportunity to amend their pleading under MCR 2.116(I)(5).[1]

Plaintiffs thereafter amended their complaint, restating their fraud and negligent misrepresentation claims against defendant with purportedly more specificity. Defendant again moved for summary disposition, arguing plaintiffs' attempt to enforce defendant's allegedly oral promise to modify the loans after the closing was unenforceable under MCL 566.132(2). Further, defendant argued because the trial court dismissed plaintiffs' negligence claims, plaintiffs could not reassert their negligence claim as part of their fraud claim. The trial court agreed and granted defendant's motion for summary disposition under MCR 2.116(C)(8).

## II. ANALYSIS

### A. PLAINTIFFS' FRAUD CLAIM

Plaintiffs first argue the trial court erred in granting summary disposition with respect to plaintiffs' fraud claim because they properly pleaded and established the claim and it was not barred by MCL 566.132(2). We disagree.

This Court reviews de novo a trial court's decision regarding a motion for summary disposition under MCR 2.116(C)(8), which tests the legal sufficiency of a claim, and MCR 2.116(C)(10), which tests the factual sufficiency of a claim. *Eplee v Lansing*, 327 Mich App 635, 644; 935 NW2d 104 (2019); *Pontiac Police & Fire Retiree Prefunded Group Health & Ins Trust Bd of Trustees v Pontiac No 2*, 309 Mich App 611, 617-618; 873 NW2d 783 (2015). When deciding a motion for summary disposition under MCR 2.116(C)(8), "[a]ll well-pleaded factual allegations are accepted as true and construed in a light most favorable to the nonmovant. *Eplee*, 327 Mich App at 644 (quotation marks and citation omitted). Moreover, this Court only considers the pleadings. *Id.* Summary disposition should be granted when "the claims alleged are so clearly unenforceable as a matter of law that no factual development could possibly justify recovery." *Id.* at 644-645 (quotation marks and citation omitted).

When deciding a motion for summary disposition under MCR 2.116(C)(10), this Court considers the pleadings, affidavits, depositions, admissions, and other documentary evidence submitted in a light most favorable to the nonmoving party. *Corley v Detroit Bd of Ed*, 470 Mich 274, 278; 681 NW2d 342 (2004). Summary disposition should be granted when "there is no

---

[1] After entry of the trial court's summary disposition order, plaintiffs moved for reconsideration, arguing the trial court erred in applying the release provision to the Modern loan. Plaintiffs also asserted the trial court erred in dismissing the negligence claims because plaintiffs' allegations created a question of fact and, therefore, it was error to prevent plaintiffs from developing factual issues. However, the trial court denied plaintiffs' motion without further explanation.

genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003).

Contract interpretation presents a question of law reviewed de novo. *White v Taylor Distrib Co, Inc*, 289 Mich App 731, 734; 798 NW2d 354 (2010). Likewise, this Court reviews de novo whether the trial court properly interpreted and applied the relevant statutes. *Mich Ass'n of Home Builders v Troy*, 504 Mich 204, 212; 934 NW2d 713 (2019). In interpreting a statute, the reviewing court's role is to determine the legislative intent that may reasonably be inferred the express language in the statute. *Id*. If the statutory language is unambiguous, then the statute must be applied as written without judicial interpretation. *Id*. It is presumed "the Legislature intended the meaning it plainly expressed . . . ." *Cox v Hartman*, 322 Mich App 292, 298-299; 911 NW2d 219 (2017) (quotation marks and citation omitted).

To establish a claim of fraud or negligent misrepresentation, plaintiffs must establish:

> (1) the defendant made a material representation; (2) the representation was false; (3) when the representation was made, the defendant knew that it was false, or made it recklessly, without knowledge of its truth, and as a positive assertion; (4) the defendant made it with the intention that the plaintiff should act upon it; (5) the plaintiff acted in reliance upon the representation; and (6) the plaintiff thereby suffered injury. [*Roberts v Saffell*, 280 Mich App 397, 403; 760 NW2d 715 (2008).]

MCR 2.112(B)(1) requires, when alleging fraud, "the circumstances constituting fraud . . . must be stated with particularity." Accordingly, "it is insufficient simply to state that a [party's] conduct was fraudulent." *Glasker-Davis v Auvenshine*, 333 Mich App 222, 232; 964 NW2d 809 (2020). Rather, "[f]raud claims must . . . address[] each element of the tort." *Stephens v Worden Ins Agency, LLC*, 307 Mich App 220, 229-230; 859 NW2d 723 (2014).

To start, we acknowledge defendant's argument that plaintiffs again failed to plead their fraud claim with specificity. In their amended complaint, plaintiffs alleged defendant disclosed the changes to the final loan documents and unilateral change to the distribution of the loan proceeds "shortly before and at closing[.]" After objecting to the changes at closing, plaintiffs alleged defendant "verbally assured [p]laintiffs following the closing the correction would be made[,]" knowing it "did not have the ability to amend the loans." Plaintiffs alleged they relied on defendant's representations "to correct the financial problems" it had caused and proceeded to close the loan. As a result, plaintiffs alleged they paid fees to defendant to close the loans, unnecessary attorney fees, and suffered lost profits, emotional damages, and other costs. The trial court did not state that it found plaintiffs' fraud claim to be sufficiently pleaded, but instead concluded plaintiffs' fraud claim was substantively barred by MCL 566.132(2). While plaintiffs went beyond merely stating defendant committed fraud, their allegations still only vaguely stated that defendant "promised" at some point during the closing to modify the terms of the loans after plaintiffs closed on the loans. Notably, and as discussed in detail below, plaintiffs did not include any evidence defendant ever made such representations. Regardless, assuming without deciding that plaintiffs sufficiently pleaded their fraud claim in their amended complaint, we address plaintiffs' arguments.

-4-

Plaintiffs first contend defendant's oral promise to modify the terms of the loans after the closing of the Modern loan was not barred by MCL 566.132(2). "A promissory note constitutes a written contract." *Joseph and Anita Russell Trust by White v Russell*, ___ Mich App ___, ___; ___ NW2d ___ (2021) (Docket No. 354511); slip op at 4. Accordingly, valid and unambiguous contract terms should be enforced as written. *Id*. Under the statute of frauds, MCL 566.132, certain types of contracts must be in writing to be enforceable. *Crown Technology Park v D&N Bank, FSB*, 242 Mich App 538, 548; 619 NW2d 66 (2000). Specifically, MCL 566.132(2) states:

> A person shall not bring an action against a financial institution to enforce any of the following promises or commitments of the financial institution unless the promise or commitment is in writing and signed with an authorized signature by the financial institution:
>
> (a) A promise or commitment to lend money, grant or extend credit, or make any other financial accommodation.
>
> (b) A promise or commitment to renew, extend, modify, or permit a delay in repayment or performance of a loan, extension of credit, or other financial accommodation.
>
> (c) A promise or commitment to waive a provision of a loan, extension of credit, or other financial accommodation. [MCL 566.132(2).]

The record does not reveal any signed writing evidencing an alleged promise to modify the loans after the closing of either loan. Plaintiffs have also not presented evidence that defendant promised, even verbally, to modify the terms of the loans after closing. Because MCL 566.132(2) clearly and unambiguously imposes an evidentiary burden for any claim seeking to enforce a promise by a financial institution, plaintiffs cannot avoid the statute of frauds by framing his request to enforce an oral promise as a fraud claim.

Plaintiffs also contend there is an exception to the applicability of MCL 566.132(2) because of defendant's alleged partial performance. The record does not indicate defendant partially performed any portion of the alleged oral promise to modify the terms of the loans after closing. While the parties' continued to communicate after the Modern loan was closed, discussing the terms and proceeds, there is no indication defendant agreed, or was preparing, to modify the terms of the loans as plaintiffs suggest. Rather, this communication largely concerned defendant explaining and restating the terms of the loans that Lammy agreed to and signed. Moreover, to the extent defendant partially performed, "[w]here the contract cannot be performed within one year, partial performance fails to negate the statute's writing or signature requirements." *Zander v Ogihara Corp*, 213 Mich App 438, 445; 540 NW2d 702 (1995). Because each of the notes were for a term greater than one year, defendant's partial performance of an alleged oral promise did not exempt application of MCL 566.132(2). Therefore, plaintiffs' fraud claim to enforce an oral promise by defendant was properly barred.

Plaintiffs next contend defendant's failure to disclose a last-minute material change to the payment terms of the Modern loan was fraudulent. The goal of contract construction is to determine and enforce the parties' intent on the basis of the plain language of the contract itself.

*UAW-GM Human Resources Ctr v KSL Recreation Corp*, 228 Mich App 486, 491; 579 NW2d 411 (1998). A review of the record reveals the final loan terms for the Modern loan required that plaintiffs pay the interest only for the first month of the loan and pay interest and principal for each subsequent payment. Plaintiffs point to defendant's initial loan proposal and subsequent "proposals" leading up to the closings to suggest the final loan documents abruptly changed the payment terms of the Modern loan from one year of interest only payments to one month of interest only payments. However, the subsequent proposals that plaintiffs rely on only contain a proposed breakdown of the loan proceeds, and no additional loan terms. The initial loan proposal, from September 2017, does include a payment term of 12 months interest only payments, which was a clear change in the terms from the initial loan proposal to the final loan documents. However, without additional evidence establishing such change was a mistake that defendant promised to correct, we are hard-pressed to conclude this change was anything more than a change to the terms of the loan during the negotiation process. In fact, there is e-mail correspondence from defendant, explaining the payment terms for the Modern loan changed after Lammy acquired new equipment that the interest-only term was intended to offset, which suggests the parties engaged in many discussions regarding the loan proceeds and terms of the loans between September 2017 and January 2018. The record also indicates defendant sent an e-mail with the draft loan documents to Lammy and his attorney, Damion Frasier, before each closing for plaintiffs' review and plaintiffs signed the loan documents. "Michigan law presumes that one who signs a written agreement knows the nature of the instrument so executed and understands its content." *Galea v FCA US LLC*, 323 Mich App 360, 369; 917 NW2d 694 (2018). This argument thus has no merit.

Plaintiffs contention that defendant's use of the loan proceeds to pay down the Modern loan, and reduce its risk-exposure, was an act of self-dealing and violated the terms of the loan similarly has no merit. Plaintiffs maintain defendant withheld $85,000 from the loan proceeds and used $75,000 of the loan proceeds to pay down the Modern loan. However, a review of the record indicates that defendant discovered a mistake in Modern's equipment appraisal before the closing for the Modern loan. Specifically, defendant "double count[ed]" the collateral value of the Modern loan by $75,000 because a truck that Lammy intended to purchase with the loan proceeds was included in the collateral value when the loan was approved. To correct this mistake and balance the loan amount and collateral value, defendant determined it would keep the Modern loan amount as is and use $75,000 of the loan proceeds to pay down the Modern loan at closing. Defendant indicated these changes in the disbursement request and authorization at closing of the Modern loan. Moreover, the disbursement request and authorization plainly showed a partial disbursement to Lammy for a vehicle purchase in the amount of $85,913.74. Lammy agreed and signed the disbursement request and authorization, without objection, indicating the information contained in the disbursement request and authorization was "true and correct and that there ha[d] been no material adverse change in borrower's financial condition[.]" One's "mere failure to read an agreement is not a defense in an action to enforce the terms of a written agreement." *Id*. Because plaintiffs failed to demonstrate defendant engaged in a material misrepresentation regarding the disbursement of the Modern loan, the trial did not err in granting summary disposition of plaintiffs' fraud claim. *Roberts*, 280 Mich App at 403.

Finally, plaintiffs contend they could rely on promissory estoppel regardless of the applicability of MCL 566.132(2). However, this Court has interpreted MCL 566.132(2) to unambiguously state "a party is precluded from bringing a claim—no matter its label—against a financial institution to enforce the terms of an oral promise" regarding a loan. *Crowne Technology*

*Park*, 242 Mich App at 550. As a result, the statute's ban on bringing "an action" is an "unqualified and broad ban." *Id*. This ban applies to claims of promissory estoppel. See *id*. (concluding "it would make absolutely no sense to conclude that the Legislature enacted a new section of the statute of frauds specifically addressing oral agreements by financial institutions but, nevertheless, the Legislature still intended to allow promissory estoppel to exist as a cause of action for those same oral agreements."). There is no dispute that defendant, a bank, is a financial institution. On this basis, plaintiffs had to establish a written promise to modify the terms of the loans existed to be enforceable, which it has failed to do. Accordingly, plaintiffs' reliance on promissory estoppel to advance its fraud claim, which sought to enforce an oral promise against a financial institution, was barred.

## B. RELEASE

While plaintiffs do not dispute a release provision contained in the final loan documents for the Livingston loan existed, plaintiffs contend (1) no release provision as to the Modern loan exists and, therefore, defendant's reliance on the release provision was misplaced, and (2) the release provision did not apply to plaintiffs' claims asserted after the Livingston loan was closed. We disagree.

Under MCR 2.116(C)(7), "[e]ntry of judgment, dismissal of the action, or other relief is appropriate because of release . . . of the claim before commencement of the action." MCR 2.116(C)(7). This Court reviews de novo a trial court's decision regarding a motion for summary disposition under MCR 2.116(C)(7). *Glasker-Davis*, 333 Mich App at 229. When reviewing a motion for summary disposition under MCR 2.116(C)(7):

> [T]his Court must accept all well-pleaded factual allegations as true and construe them in favor of the plaintiff, unless other evidence contradicts them. If any affidavits, depositions, admissions, or other documentary evidence are submitted, the court must consider them to determine whether there is a genuine issue of material fact. If no facts are in dispute, and if reasonable minds could not differ regarding the legal effect of those facts, the question whether the claim is barred is an issue of law for the court. However, if a question of fact exists to the extent that factual development could provide a basis for recovery, dismissal is inappropriate. [*Dextrom v Wexford Co*, 287 Mich App 406, 428; 789 NW2d 211 (2010) (footnotes omitted)]

Likewise, "[t]he interpretation of a release presents a question of law that this Court reviews de novo." *Radu v Herndon & Herndon Investigations, Inc*, 302 Mich App 363, 374; 838 NW2d 720 (2013).

However, an issue is preserved for appellate review if it is raised and addressed by the lower court and pursued on appeal, *Peterman v Dep't of Natural Resources*, 446 Mich 177, 182-183; 521 NW2d 499 (1994), and "an issue is not preserved if it is raised for the first time in a motion for reconsideration in the trial court." *George v Allstate Ins Co*, 329 Mich App 448, 454; 942 NW2d 628 (2019). Because plaintiffs first argued the trial court erred as to the application of the release provision in their motion for reconsideration, the issue is not preserved for appellate review. This Court reviews unpreserved issues for plain error. *Demski v Petlick*, 309 Mich App

404, 426-427; 873 NW2d 596 (2015). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) the error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id*. at 427 (quotations and citations omitted). "Generally, an error affects substantial rights if it caused prejudice, i.e., it affected the outcome of the proceedings." *In re Utrera*, 281 Mich App 1, 9; 761 NW2d 253 (2008).

Plaintiffs offer no real argument or evidence that defendant, or the trial court, relied on a nonexistent release, or misinterpreted a release provision, that barred plaintiffs' claims related to the Modern loan. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give issues cursory treatment with little or no citation of supporting authority." *Bank of America, NA v Fidelity Nat'l Title Ins Co*, 316 Mich App 480, 517; 892 NW2d 467 (2016) (quotation marks and citation omitted). Plaintiffs' failure to provide any analysis or authority in support of their release argument renders it abandoned. *Id*. Briefly considering plaintiffs argument in any event, we conclude it is without merit.

A cause of action may be barred, under MCR 2.116(C)(7), where a valid release of liability exists between the parties. *Xu v Gay*, 257 Mich App 263, 266; 668 NW2d 166 (2003); MCR 2.116(C)(7). "A release of liability is valid if it is fairly and knowingly made." *Wyrembelski v St Clair Shores*, 218 Mich App 125, 127; 553 NW2d 651 (1996). "The validity of a release turns on the intent of the parties." *Batshon v Mar-Que Gen Contractors, Inc*, 463 Mich 646, 649 n 4; 624 NW2d 903 (2001). "If the text of the release is unambiguous, the parties' intentions must be ascertained from the plain, ordinary meaning of the language of the release." *Collucci v Ekland*, 240 Mich App 654, 658; 613 NW2d 402 (2000). A release is invalid if it was procured by fraud or a misrepresentation was made with the intent to mislead or deceive. *Id*. at 658-659; *Paterek v 6600 Ltd*, 186 Mich App 445, 449; 465 NW2d 342 (1990).

The release provision here released defendant of all claims "from the date of the Borrower's first contact with Bank up to the [closing] date of [the Livingston loan]." This release provision necessarily includes plaintiffs' negligence and fraud claims related to the Livingston loan. See *Dresden v Detroit Macomb Hosp Corp*, 218 Mich App 292, 297-298; 553 NW2d 387 (1996) (discussing the broad nature of release language mentioning " 'any and all' causes of action" and concluding that it applied to bar a fraud claim). While plaintiffs attempt to distinguish their claims as arising after the closing of the Livingston loan to avoid the release provision, plaintiffs consistently argue that defendant's negligent conduct, i.e., incompetently drafting the loan documents, occurred before the closing caused plaintiffs' reliance and damages. Because plaintiffs' do not dispute their voluntary agreement to, and signature on, the release provision, the trial court properly concluded the release provision barred plaintiffs' claims related to the Livingston loan under MCR 2.116(C)(7).

As to plaintiffs' claims related to the Modern loan, it does not appear that the trial court relied on any release provision. Rather, the trial court granted summary disposition of plaintiffs' negligence claims for a failure to establish an independent duty outside of defendant's contractual duties. The trial court granted summary disposition of plaintiffs' breach of fiduciary duty claim for a failure to establish a fiduciary duty existed between plaintiffs and defendant. And the trial court granted summary disposition of plaintiffs' fraud claim because plaintiffs' attempt to enforce

an oral promise against defendant violated MCL 566.132(2)(b). The trial court made no error with respect to the release.

## C.  PLAINTIFFS' NEGLIGENCE CLAIMS

Plaintiffs argue the trial court erred in dismissing their negligence claims, finding the claims did not arise from a separate and distinct duty outside of defendant's contractual duties. We disagree.

To establish a negligence claim, a plaintiff must show: "(1) that the defendant owed a duty to the plaintiff, (2) that the defendant breached the duty, (3) that the defendant's breach of the duty caused the plaintiff injuries, and (4) that the plaintiff suffered damages." *Lelito v Monroe*, 273 Mich App 416, 418-419; 729 NW2d 564 (2006). "Duty is defined as the legal obligation to conform to a specific standard of conduct in order to protect others from unreasonable risks of injury." *Id*. at 419 (quotation marks and citation omitted). "In deciding whether a duty should be imposed, the court must look at several factors, including the relationship of the parties, the foreseeability of the harm, the burden on the defendant, and the nature of the risk presented." *Id*. (quotation marks and citation omitted). "There can be no actionable negligence if no duty exists." *Id*. "The threshold issue of whether a duty exists is determined by the court as a matter of law." *Id*. In "tort actions based on a contract," the trial court "should use a 'separate and distinct' mode of analysis." *Fultz v Union-Commerce Assoc*, 470 Mich 460, 467; 683 NW2d 587 (2004). "Specifically, the threshold question is whether the defendant owed a duty to the plaintiff that is separate and distinct from the defendant's contractual obligations." *Id*. "If no independent duty exists, no tort action based on a contract will lie." *Id*.

The record here indicates that plaintiffs alleged defendant was a negligent lending institution, failing to comply with the terms of the loans and distribute the loan proceeds accordingly. Plaintiffs contend the negligence claims do not amount to a breach-of-contract claim, but encompass defendant's incompetency to draft and execute a proper loan agreement. Despite their speculative argument, plaintiffs fail to identify the nature of any duty that existed separately and distinctly from the contractual relationship they had with defendant. Rather, any duty owed to plaintiffs arose exclusively from the contractual relationship because no relationship, outside of the lender-borrower relationship, existed between the parties. *Fultz*, 470 Mich at 467. As a result, the trial court properly found that plaintiffs failed to establish any duty arising outside of defendant's contractual relationship with plaintiffs.

Affirmed.

/s/ David H. Sawyer
/s/ Deborah A. Servitto
/s/ Michelle M. Rick