**Lansing, Michigan**

# Opinion

Chief Justice:          Justices:

Robert P. Young, Jr.     Michael F. Cavanagh
                         Marilyn Kelly
                         Stephen J. Markman
                         Diane M. Hathaway
                         Mary Beth Kelly
                         Brian K. Zahra

FILED JULY 31, 2012

STATE OF MICHIGAN

SUPREME COURT

CHARLOTTE HOFFNER,

        Plaintiff-Appellee,
        Cross-Appellant,

and

BLUE CROSS AND BLUE SHIELD OF
MICHIGAN,

        Plaintiff-Appellee,

v                                                    No. 142267

RICHARD LANCTOE and LORI
LANCTOE,

        Defendants-Appellants,
        Cross-Appellees,

and

PAMELA MACK, TIFFANI K. AHO, and
MOUSIE, INC., d/b/a FITNESS XPRESS,

        Defendants.

BEFORE THE ENTIRE BENCH

YOUNG, C.J.

Michigan, being above the 42nd parallel of north latitude, is prone to winter. And with winter comes snow and ice accumulations on sidewalks, parking lots, roads, and other outdoor surfaces. Unfortunately, the accumulation of snow, ice, and other slippery hazards on surfaces regularly traversed by the citizens of this state results in innumerable mishaps and injuries each year. This case tests the extent of a premises owner's liability for one of those winter-related accidents. In this case, plaintiff recognized the danger posed by ice on a sidewalk, yet chose to confront the hazard in an ultimately unsuccessful effort to enter the premises. Plaintiff claims that the premises' owners should be liable for her injuries, while the premises' owners argue that they are not liable because plaintiff's accident occurred as the result of an ordinary, open and obvious condition.

In many regards, this case is unremarkable both in its simplicity and its frequent occurrence in Michigan. Yet there has been some confusion surrounding the application of the open and obvious doctrine to wintry conditions. In Michigan, a premises possessor owes a duty to use reasonable care to protect invitees from an unreasonable risk of harm caused by dangerous conditions on the premises, including snow and ice conditions. However, liability does not arise for open and obvious dangers *unless special aspects* of a condition make even an open and obvious risk *unreasonably dangerous*. This may include situations in which it is "effectively unavoidable" for an invitee to avoid the hazard posed by such an inherently dangerous condition.

We reject plaintiff's argument that the hazard in this case was effectively unavoidable because plaintiff had a business interest in entering the premises. Neither the caselaw of this state nor the principles underlying the well-established "open and

2

obvious" doctrine support plaintiff's theory of an expanded "business invitee" exception to the open and obvious doctrine, whereby invitees frequenting a business open to the public have an unassailable right to sue in tort for injuries caused by open and obvious conditions. Instead, longstanding principles governing the law of premises liability apply with their traditional force to this case, and exceptions to the open and obvious doctrine are, and are intended to be, limited. The touchstone of the "special aspects" analysis is that the condition must be characterized by its *unreasonable risk of harm*. Thus, an "unreasonably dangerous" hazard must be just that—not just a dangerous hazard, but one that is unreasonably so. And it must be more than theoretically or retrospectively dangerous. Similarly, an "effectively unavoidable" condition must be an inherently dangerous hazard that a person is inescapably required to confront under the circumstances. In this case, the fact that plaintiff, a business invitee, had a contractual *right* to enter the premises does not mean that she was *unavoidably compelled* to confront the icy condition.

We reverse in part the judgment of the Court of Appeals and remand this case to the circuit court for entry of summary disposition in favor of defendants Richard and Lori Lanctoe. The ice on the sidewalk was open and obvious, and plaintiff has not provided evidence of special aspects of the condition that justify imposing liability on the Lanctoes despite the open and obvious nature of the danger.

3

## I. FACTS AND PROCEDURAL HISTORY

Plaintiff Charlotte Hoffner had a paid membership to a fitness center, Fitness Xpress, one of several tenants located in a commercial building in Ironwood, Michigan.[1] There is only one entrance to Fitness Xpress, which is serviced by a sidewalk that runs along the length of the building and connects the building to its parking lot. The building, sidewalk, and parking lot are all owned and maintained by defendants Richard and Lori Lanctoe. Under the lease agreements between the building's business tenants and the Lanctoes, the Lanctoes are responsible for snow removal from the parking lot and sidewalk, although some tenants occasionally salt the sidewalk in front of the building.

At around 11:00 a.m. on January 28, 2006, plaintiff drove to the building with the intent to exercise. Although the Lanctoes had already cleared and salted the parking lot and sidewalk earlier that day, by the time plaintiff arrived she observed that the sidewalk was icy at the entrance to Fitness Xpress. Plaintiff stated that she could "see the ice and the roof was dripping." Notwithstanding her awareness of the conditions, plaintiff formed the opinion that the ice "didn't look like it would be that bad" and decided to enter the building. As plaintiff explained, "it was only just a few steps," and "I thought that I could make it." Unfortunately, she fell on the ice, injuring her back.

Plaintiff subsequently brought the instant premises liability suit against the Lanctoes, as well as Fitness Xpress and its owners and operator. All defendants moved

---

[1] References in this opinion to "plaintiff" are to Charlotte Hoffner and not to her medical insurer, Blue Cross Blue Shield of Michigan, which intervened as a party plaintiff.

for summary disposition. Relevant here, defendants argued that plaintiff was barred from pursuing her claim of premises liability because of the open and obvious doctrine, given that the ice was plainly visible, which she recognized before confronting it. The Gogebic Circuit Court denied all of the defendants' motions for summary disposition, reasoning that there was a question of fact regarding whether the icy hazard was "effectively unavoidable" in part because a jury could find that plaintiff had a right to access the building to get value for her membership. The circuit court explained, "So with one entrance, and the fact that [plaintiff] not only had a good reason to go in there, had business to go in there, contractually [plaintiff] had an interest in the activities and equipment that were inside there."

Defendants sought leave to appeal, and the Court of Appeals unanimously affirmed in part and reversed in part.[2] The Court reversed the trial court's ruling with regard to Fitness Xpress and its owners, holding that they were entitled to summary disposition because they did not have possession and control of the sidewalk where the slip and fall occurred. However, the Court affirmed with regard to the trial court's ruling that the open and obvious doctrine does not bar plaintiff's claims against the premises' owners, the Lanctoes, because the dangerous condition was effectively unavoidable. Similar to the reasoning employed by the circuit court, the Court of Appeals reasoned that

---

[2] *Hoffner v Lanctoe*, 290 Mich App 449; 802 NW2d 648 (2010).

Hoffner had contracted to use Fitness Xpress and may have needed to use it for health reasons. Because there was only one customer entrance to the facility that was fronted by the icy sidewalk, 'the objective nature of the condition of the premises at issue' reveals that the icy sidewalk was effectively unavoidable as it related to the use of the premises.[3]

In short, the panel believed that because there did not exist an alternative route by which Hoffner, as an invitee with a contractual right to use the facility, could enter the building, the open and obvious doctrine did not serve as a bar to plaintiff's claim.

The Lanctoes filed an application for leave to appeal in this Court, and we directed the clerk to schedule arguments on whether to grant the application for leave to appeal or take other action.[4]

## II. STANDARD OF REVIEW

The circuit court denied the Lanctoes' motion for summary disposition pursuant to MCR 2.116(C)(10), which the Court of Appeals affirmed. A motion made under MCR 2.116(C)(10) tests the factual sufficiency of a claim, and when the proffered evidence fails to establish a genuine issue of material fact, the moving party is entitled to judgment as a matter of law. This Court reviews de novo the grant or denial of summary disposition.[5]

---

[3] *Id.* at 464 (citations omitted).

[4] *Hoffner v Lanctoe*, 489 Mich 877 (2011).

[5] *Maiden v Rozwood*, 461 Mich 109, 118, 120; 597 NW2d 817 (1999).

III. ANALYSIS

A. PRINCIPLES OF LAW

The law of premises liability in Michigan has its foundation in two general precepts. First, landowners must act in a reasonable manner to guard against harms that threaten the safety and security of those who enter their land.[6] Second, and as a corollary, landowners are not insurers; that is, they are not charged with guaranteeing the safety of every person who comes onto their land.[7] These principles have been used to establish well-recognized rules governing the rights and responsibilities of both landowners and those who enter their land. Underlying all these principles and rules is the requirement that both the possessors of land and those who come onto it exercise common sense and prudent judgment when confronting hazards on the land. These rules balance a possessor's ability to exercise control over the premises with the invitees' obligation to assume personal responsibility to protect themselves from apparent dangers.

The starting point for any discussion of the rules governing premises liability law is establishing what duty a premises possessor owes to those who come onto his land.

---

[6] See *Bertrand v Alan Ford, Inc*, 449 Mich 606, 609; 537 NW2d 185 (1995).

[7] See *Lugo v Ameritech Corp, Inc*, 464 Mich 512, 517; 629 NW2d 384 (2001); *Bradley v Burdick Hotel Co*, 306 Mich 600, 604; 11 NW2d 257 (1943); accord *Dascola v YMCA of Lansing*, 490 Mich 899 (2011) (YOUNG, C.J., concurring) ("It is axiomatic in Michigan law that a premises owner is not an absolute insurer against every conceivable harm that may occur on his premises.").

With regard to invitees,[8] a landowner owes a duty to use reasonable care to protect invitees from unreasonable risks of harm posed by dangerous conditions on the owner's land.[9] Michigan law provides liability for a breach of this duty of ordinary care when the premises possessor knows or should know of a dangerous condition on the premises of which the invitee is unaware and fails to fix the defect, guard against the defect, or warn the invitee of the defect.[10]

Perfection is neither practicable nor required by the law, and "[u]nder ordinary circumstances, the overriding public policy of encouraging people to take reasonable care for their own safety precludes imposing a duty on the possessor of land to make ordinary [conditions] 'foolproof.'"[11] Thus, an integral component of the duty owed to an invitee considers whether a defect is "open and obvious."[12] The possessor of land "owes no duty to protect or warn" of dangers that are open and obvious because such dangers, by their

---

[8] The duty of care owed by a premises possessor will, of course, depend on whether a plaintiff is an invitee, a licensee, or a trespasser. See generally *Stitt v Holland Abundant Life Fellowship*, 462 Mich 591, 596-598; 614 NW2d 88 (2000). In this case, it is undisputed that plaintiff was an invitee—the class to whom the premises owner owes the *greatest* duty of care.

[9] *Williams v Cunningham Drug Stores, Inc*, 429 Mich 495, 499; 418 NW2d 381 (1988), citing 2 Restatement Torts, 2d, § 343, pp 215-216.

[10] *Bertrand*, 449 Mich at 609; *Samuelson v Cleveland Iron Mining Co*, 49 Mich 164, 170; 13 NW 499 (1882).

[11] *Bertrand*, 449 Mich at 616-617.

[12] *Lugo*, 464 Mich at 516. When no material issues of fact exist, the existence of a legal duty is a question of law for the court to decide. See, e.g., *Trager v Thor*, 445 Mich 95; 516 NW2d 69 (1994).

nature, apprise an invitee of the potential hazard, which the invitee may then take reasonable measures to avoid.[13]  Whether a danger is open and obvious depends on whether it is reasonable to expect that an average person with ordinary intelligence would have discovered it upon casual inspection.[14]  This is an *objective standard*, calling for an examination of "the objective nature of the condition of the premises at issue."[15]

Yet, as a limited exception to the circumscribed duty owed for open and obvious hazards, liability may arise when *special aspects* of a condition make even an open and obvious risk unreasonable.  When such special aspects exist, a premises possessor must take reasonable steps to protect an invitee from that *unreasonable* risk of harm.[16]  We explained in *Lugo v Ameritech Corp, Inc*, how to approach whether special aspects exist in a particular case:

> In considering whether a condition presents such a uniquely dangerous potential for severe harm as to constitute a "special aspect" and to avoid barring liability in the ordinary manner of an open and obvious danger, it is important to maintain the proper perspective, which is to consider the risk posed by the condition *a priori*, that is, before the incident involved in a particular case.  It would, for example, be inappropriate to conclude in a retrospective fashion that merely because a particular

---

[13] *Riddle v McLouth Steel Prod Corp*, 440 Mich 85, 96; 485 NW2d 676 (1992); accord *Lugo*, 464 Mich at 516; *Bertrand*, 449 Mich at 610-611.

[14] *Joyce v Rubin*, 249 Mich App 231, 238; 642 NW2d 360 (2002); *Novotney v Burger King Corp (On Remand)*, 198 Mich App 470, 474-475; 499 NW2d 379 (1993).

[15] *Lugo*, 464 Mich at 523-524.  The objective standard recognizes that a premises owner is not required to anticipate every harm that may arise as a result of the idiosyncratic characteristics of each person who may venture onto his land.  This standard thus provides predictability in the law.

[16] *Lugo*, 464 Mich at 517; *Bertrand*, 449 Mich at 614.

plaintiff, in fact, suffered harm or even severe harm, that the condition at issue in a case posed a uniquely high risk of severe harm. This is because a plaintiff may suffer a more or less severe injury because of idiosyncratic reasons, such as having a particular susceptibility to injury or engaging in unforeseeable conduct, that are immaterial to whether an open and obvious danger is nevertheless unreasonably dangerous. . . . [The law] does not allow the imposition of liability merely because a particular open and obvious condition has some potential for severe harm. Obviously, the mere ability to imagine that a condition could result in severe harm under highly unlikely circumstances does not mean that such harm is reasonably foreseeable. However, we believe that it would be unreasonable for us to fail to recognize that unusual open and obvious conditions could exist that are unreasonably dangerous because they present an extremely high risk of severe harm to an invitee who fails to avoid the risk in circumstances where there is no sensible reason for such an inordinate risk of severe harm to be presented.[17]

It is worth noting *Lugo*'s emphasis on the narrow nature of the "special aspects" exception to the open and obvious doctrine. Under this limited exception, liability may be imposed only for an "unusual" open and obvious condition that is "unreasonably dangerous" because it "present[s] an extremely high risk of severe harm to an invitee" in circumstances where there is "no sensible reason for such an inordinate risk of severe harm to be presented."[18] The touchstone of the duty imposed on a premises owner being reasonableness, this narrow "special aspects" exception recognizes there could exist a condition that presents a risk of harm that is so unreasonably high that its presence is inexcusable, even in light of its open and obvious nature.

---

[17] *Lugo*, 464 Mich at 518 n 2.

[18] *Id.* at 519 n 2.

This Court has discussed two instances in which the special aspects of an open and obvious hazard could give rise to liability: when the danger is *unreasonably dangerous* or when the danger is *effectively unavoidable*. *In either circumstance*, such dangers are those that "give rise to a uniquely high likelihood of harm or severity of harm if the risk is not avoided"[19] and thus must be differentiated from those risks posed by ordinary conditions or typical open and obvious hazards. Further, we have recognized that neither a common condition nor an avoidable condition is uniquely dangerous.[20] Thus, when a plaintiff demonstrates that a special aspect exists or that there is a genuine issue of material fact regarding whether a special aspect exists, tort recovery may be permitted if the defendant breaches his duty of reasonable care. Again, as we explained in *Lugo*:

> "[I]f the particular activity or condition creates a risk of harm *only* because the invitee does not discover the condition or realize its danger, then the open and obvious doctrine will cut off liability if the invitee should have discovered the condition and realized its danger. On the other hand, if the risk of harm remains unreasonable, despite its obviousness or despite knowledge of it by the invitee, then the circumstances may be such that the invitor is required to undertake reasonable precautions."[21]

With specific regard to ice and snow cases, this Court has "reject[ed] the prominently cited notion that ice and snow hazards are obvious to all and therefore may

---

[19] *Id.* at 519.

[20] *Id.* at 520 ("[T]ypical open and obvious dangers (such as ordinary potholes in a parking lot) do not give rise to these special aspects."); *Corey v Davenport College of Business (On Remand)*, 251 Mich App 1, 8-9; 649 NW2d 392 (2002).

[21] *Lugo*, 464 Mich at 516-517, quoting *Bertrand*, 449 Mich at 611, citing and discussing 2 Restatement Torts, 2d, §§ 343 and 343A, pp 215-222.

not give rise to liability" under any circumstances.[22]  Rather, a premises owner has a duty to exercise reasonable care to diminish the hazards of ice and snow accumulation, requiring that "reasonable measures be taken within a reasonable time after an accumulation of ice and snow to diminish the hazard of injury to the invitee."[23] However, it is also well established that wintry conditions, like any other condition on the premises, may be deemed open and obvious.[24]  Michigan courts thus ask whether the individual circumstances, including the surrounding conditions, render a snow or ice condition open and obvious such that a reasonably prudent person would foresee the danger.[25]  When a condition is deemed open and obvious, a premises owner's duties are considerably narrowed.  Thus, as with premises liability law generally, if the condition is

---

[22] *Quinlivan v Great Atlantic & Pacific Tea Co, Inc*, 395 Mich 244, 261; 235 NW2d 732 (1975).

[23] *Id.*

[24] See *Mann v Shusteric Enterprises, Inc*, 470 Mich 320, 332-333; 683 NW2d 573 (2004); *Perkoviq v Delcor Homes-Lake Shore Pointe, Ltd*, 466 Mich 11; 643 NW2d 212 (2002).  *Quinlivan* only established a duty of care for premises owners regarding snow and ice conditions.  Yet, a landowner's duty regarding these conditions as set forth and discussed in *Quinlivan* must be understood in light of this Court's subsequent decisions in *Bertrand* and *Lugo*.  See, e.g., *Mann*, 470 Mich at 333 n 13; *Corey*, 251 Mich App at 8-9.  We thus take this opportunity to clarify how well-recognized exceptions to the traditional duty of care imposed on premises owners—namely, the open and obvious doctrine—apply in these circumstances.

[25] See, e.g., *Janson v Sajewski Funeral Home, Inc*, 486 Mich 934; 782 NW2d 201 (2010); *Kenny v Kaatz Funeral Home, Inc*, 472 Mich 929 (2005), rev'g 264 Mich App 99; 689 NW2d 737 (2004), for the reasons stated in Judge GRIFFIN's dissenting opinion, 264 Mich App at 115-122; *Ververis v Hartfield Lanes (On Remand)*, 271 Mich App 61; 718 NW2d 382 (2006);

open and obvious, a plaintiff who is injured by the condition may avoid summary disposition only if there are special aspects to the condition.[26]

In this case, there is no dispute that the ice on which plaintiff fell was objectively open and obvious. Instead, the parties' real dispute concerns whether that readily apparent ice patch was effectively unavoidable and thus constituted a special aspect. This Court has not specifically defined the scope of what constitutes an effectively unavoidable condition. In *Lugo*, we provided the following brief illustrative discussion of a hazard that could be considered effectively unavoidable:

> An illustration of such a situation might involve, for example, a commercial building with only one exit for the general public where the floor is covered with standing water. While the condition is open and obvious, a customer wishing to exit the store must leave the store through the water. In other words, the open and obvious condition is effectively unavoidable.[27]

As with any special aspect, it is worth noting from the outset that our discussion in *Lugo* of an effectively unavoidable condition was set in the context of a condition that is inherently dangerous and thus poses a severe risk of harm.

The Court of Appeals has applied this unavoidability exception in several notable decisions. In *Joyce v Rubin*, the plaintiff fell on a snowy sidewalk when attempting to retrieve personal belongings from a private home. The plaintiff argued that the slippery condition was unavoidable because the homeowner had refused to provide a rug for

---

[26] See, e.g., *Corey*, 251 Mich App at 8-9.

[27] *Lugo*, 464 Mich at 518.

traction and would not allow the plaintiff to enter the house through an alternative means. The Court of Appeals disagreed, holding that the exception for effectively unavoidable hazards did not apply because the plaintiff had a choice other than to confront the condition:

> Though Joyce says that she had no choice but to traverse the slippery walkway to the front door, she presents no evidence that the condition and surrounding circumstances would "give rise to a uniquely high likelihood of harm" or that it was an unavoidable risk. First, Joyce could have simply removed her personal items another day or advised [the defendant] Debra Rubin that, if Rubin did not allow her to use the garage door, she would have to move another day. Further, unlike the example in *Lugo*, Joyce was not effectively trapped inside a building so that she *must* encounter the open and obvious condition in order to get out. Joyce specifically testified that, after she slipped twice on the sidewalk, she *walked around the regular pathway* to avoid the slippery condition. Therefore, though this is a close case, Joyce's own testimony established that she could have used an available, alternative route to avoid the snowy sidewalk. While Debra Rubin's alleged refusal to place a rug on the sidewalk or allow access through the garage, if true, may have been inhospitable, no reasonable juror could conclude that the aspects of the condition were so unavoidable that Joyce was effectively forced to encounter the condition.[28]

In *Corey v Davenport College of Business (On Remand)*, the plaintiff fell on icy steps outside a college dormitory. The Court of Appeals affirmed the trial court's dismissal of the action, ruling that the steps were not unavoidable because the plaintiff had a choice whether to confront the condition:

> In applying *Lugo* and *Joyce* to the present case, we conclude that the slippery steps at issue here were not only an open and obvious condition but also there are no "special aspects" of the steps that create a "uniquely high likelihood of harm or severity of harm" if the risk is not avoided or serve to remove that condition from the open and obvious danger doctrine.

---

[28] *Joyce*, 249 Mich App at 242-243.

14

Plaintiff here testified that although he saw the steps and their condition and knew that there was an alternate route into the building that was close by, he nonetheless attempted to use them.[29]

Finally, the Court in *Robertson v Blue Water Oil Co*[30] held that a condition *was* effectively unavoidable—a decision upon which plaintiff and the Court of Appeals below rely heavily. In *Robertson*, the plaintiff, a truck driver, visited the defendant's gas station to buy fuel and windshield washer fluid in order to operate his truck during an extreme winter storm that was occurring at the time and had covered the area with a layer of ice. The plaintiff fell on his way into the station, and the Court of Appeals, in a split decision, held that there was a question of fact with regard to whether the open and obvious hazard was effectively unavoidable, distinguishing *Joyce* and *Corey*:

> The record contains no evidence that there existed any available alternatives. Even if there were, the scope of the inquiry is limited to "the objective nature of the condition of the premises at issue." Therefore, the only inquiry is whether the condition was effectively unavoidable *on the premises*. Here, there was clearly no alternative, ice-free path from the gasoline pumps to the service station, a fact of which defendant had been made aware several hours previously. The ice was effectively unavoidable.

> Defendant argues that the ice was avoidable because plaintiff was not "effectively trapped." *Joyce v Rubin*, 249 Mich App 231, 242; 642 NW2d 360 (2002). However, reliance on *Joyce* is misplaced for a number of reasons. Although we discussed the possibility that the plaintiff in *Joyce* could have gone to the premises on a different day, our holding was based on the plaintiff's own testimony that she was aware and, indeed, had made use, of an available alternative route. In any event, a reasonable trier of fact could rationally find that plaintiff *was* "effectively trapped" because it

---

[29] *Corey*, 251 Mich App at 6-7.

[30] *Robertson v Blue Water Oil Co*, 268 Mich App 588; 708 NW2d 749 (2005).

15

would have been sufficiently unsafe, given the weather conditions, to drive away from the premises without windshield washer fluid.[31]

## B. DISCUSSION AND APPLICATION

The "special aspects" exception to the open and obvious doctrine for hazards that are effectively unavoidable is a limited exception designed to avoid application of the open and obvious doctrine only when a person is subjected to an unreasonable risk of harm. Unavoidability is characterized by an *inability to be avoided*, an *inescapable* result, or the *inevitability* of a given outcome.[32] Our discussion of unavoidability in *Lugo* was tempered by the use of the word "effectively," thus providing that a hazard must be unavoidable or inescapable *in effect* or *for all practical purposes*. Accordingly, the

---

[31] *Id.* at 593-594 (citations omitted). The *Robertson* majority further commented on the fact that the plaintiff was a business invitee:

> Finally, and more significantly, plaintiff was a *paying customer* who was on defendant's premises for defendant's commercial purposes, and thus he was an *invitee* of defendant. As our Supreme Court noted, "invitee status necessarily turns on the existence of an 'invitation.'" Defendant's contention that plaintiff should have gone elsewhere is simply inconsistent with defendant's purpose in operating its gas station. The logical consequence of defendant's argument would be the irrational conclusion that a business owner who invites customers onto its premises would never have any liability to those customers for hazardous conditions as long as the customers even technically had the option of declining the invitation. [*Id.* at 594 (citations omitted).]

The decision in *Robertson* was subject to a strong dissent, which would have held that the open and obvious doctrine applied because the conditions were not "effectively unavoidable." See *Robertson*, 268 Mich App at 598-599 (KELLY, J., dissenting). For reasons stated herein, we reject the *Robertson* majority's analysis of the "effectively unavoidable" doctrine.

[32] See, e.g., *Random House Webster's College Dictionary* (1997).

16

standard for "effective unavoidability" is that a person, for all practical purposes, must be *required* or *compelled* to confront a dangerous hazard. As a parallel conclusion, situations in which a person has a *choice* whether to confront a hazard cannot truly be unavoidable, or even effectively so.

Plaintiff argues here that the ice that caused her harm was effectively unavoidable and, thus, constituted a special aspect, because she had a contractual right to enter Fitness Xpress as a paid member. The lower courts similarly held that the contractual relationship constituted a business interest, thereby qualifying plaintiff as an invitee, and thus "it would be disingenuous to relieve defendants of their duty of care."[33] Accordingly, because no alternative route existed, reasoned the Court of Appeals, "the icy sidewalk was effectively unavoidable as it related to the use of the premises."[34]

We reject these conclusions permitting recovery for a typical hazard confronted under ordinary circumstances as inconsistent with the law of this state regarding the duty owed to invitees and premises owners' resultant liability for injuries sustained by invitees. The law of premises liability in Michigan provides that the duty owed to an invitee applies to *any business invitee*, regardless of whether a preexisting contractual or other relationship exists, and thus the open and obvious rules similarly apply with equal force to those invitees. This Court has stated that the crucial question when determining

---

[33] *Hoffner*, 290 Mich App at 464.

[34] *Id.*

17

invitee status is the commercial nature of the relationship between the premises owner

and the other party:

> [T]he imposition of additional expense and effort by the landowner, requiring the landowner to inspect the premises and make them safe for visitors, must be directly tied to the owner's commercial business interests. It is the owner's desire to foster a commercial advantage by inviting persons to visit the premises that justifies imposition of a higher duty. In short, we conclude that the prospect of pecuniary gain is a sort of quid pro quo for the higher duty of care owed to invitees. Thus, we hold that the owner's reason for inviting persons onto the premises is the primary consideration when determining the visitor's status: In order to establish invitee status, a plaintiff must show that the premises were held open for a *commercial* purpose.[35]

Perhaps what is most troubling regarding the theory of liability advanced by

plaintiff is that it would result, if upheld, in an expansion of liability by imposing a new,

*greater* duty than that already owed to invitees. By providing that a simple business

interest is sufficient to constitute an *unquestionable necessity* to enter a business, thereby

making any intermediate hazard "unavoidable," plaintiff's proposed rule represents an

unwarranted expansion of liability. It would, in effect, create a new subclass of invitees

consisting of those who have a business or contractual relationship. Such a rule would

transform the very limited exception for dangerous, effectively unavoidable conditions

into a broad exception covering nearly all conditions existing on premises where business

is conducted. Such a rule would completely redefine the duty owed to invitees, allowing

the exception to swallow the rule. This proposed rule appears to be an erroneous

---

[35] *Stitt*, 462 Mich at 604; see also *Sink v Grand Trunk W R Co*, 227 Mich 21; 198 NW 238 (1924).

extrapolation of the basic principle that invitees are owed a greater duty of care than licensees or trespassers. Simply put, Michigan caselaw does not support providing special protection to those invitees who have paid memberships or another existing relationship to the businesses or institutions that they frequent above and beyond that owed to any other type of invitee. Neither possessing a right to use services, nor an invitee's subjective need or desire to use services, heightens a landowner's duties to remove or warn of hazards or affects an invitee's choice whether to confront an obvious hazard.[36] To conclude otherwise would impermissibly shift the focus from an objective examination of the *premises* to an examination of the subjective beliefs of the *invitee*.

The unreasonableness of a hazard remains the touchstone for permitting recovery under the "special aspects" exception to the open and obvious doctrine. For example, in *Perkoviq v Delcor Homes-Lake Shore Pointe Ltd*,[37] the plaintiff's employment in the construction business necessitated that he work around a slippery condition while preparing to paint a partially constructed home. Unfortunately, the plaintiff slipped on ice or frost; he pursued a premises liability claim against the general contractor. This

---

[36] At oral argument, plaintiff engaged in an effort to limit this invitee subclass one step further to individuals engaged in activities designed to improve health. Plaintiff has cited no caselaw in support, and for good reason: there is even less support for such an idiosyncratic exception to the open and obvious doctrine than there is a lack of support for a general "business invitee" exception or "contractual right of use" exception to the open and obvious doctrine. We can discern no principled reason to begin subdividing premises liability law on the basis of how worthy a purpose we may subjectively believe an invitee had to frequent a business.

[37] *Perkoviq*, 466 Mich at 11.

Court unanimously concluded that the open and obvious doctrine barred recovery and that no special aspects existed with regard to a typical slippery condition occasioned by the presence of snow and ice. Relevant here, it cannot be said that compulsion to confront a hazard by the *requirement of employment* is any less "avoidable" than the need to confront a hazard in order to enjoy the privileges provided by a contractual relationship, such as membership in a fitness club. *Perkoviq* illustrates that an overbroad understanding of effective unavoidability cannot undermine the historical parameters of the limited duty owed when the condition is open and obvious.

Thus, to the extent that Michigan courts in *Robertson* or otherwise alluded to a new breed of business invitee protection, we disavow that reasoning as inconsistent with traditional principles of premises liability law. Instead, when confronted with an issue concerning an open and obvious hazard, Michigan courts should hew closely to the principles previously discussed. It bears repeating that exceptions to the open and obvious doctrine are *narrow* and designed to permit liability for such dangers only in *limited*, extreme situations.[38] Thus, an "unreasonably dangerous" hazard must be just that—not just a dangerous hazard, but one that is *unreasonably* so. And it must be *more than* theoretically or retrospectively dangerous, because even the most unassuming situation can often be dangerous under the wrong set of circumstances.[39] An "effectively

---

[38] See *Lugo*, 464 Mich at 519 ("[O]nly those special aspects that give rise to a uniquely high likelihood of harm or severity of harm if the risk is not avoided will serve to remove that condition from the open and obvious danger doctrine.").

[39] See *id.* at 518 n 2.

unavoidable" hazard must truly be, for all practical purposes, one that a person is required to confront under the circumstances. A general interest in using, or even a contractual right to use, a business's services simply does not equate with a compulsion to confront a hazard and does not rise to the level of a "special aspect" characterized by its *unreasonable risk of harm*.

Applying those principles here, we conclude that this case calls for little more than a simple application of the open and obvious doctrine to bar plaintiff's claim because plaintiff was injured as a result of an *avoidable open and obvious danger* and has provided no evidence of a special aspect to the condition that would justify the imposition of liability. Plaintiff observed the ice at the entrance to the fitness center,[40] which she desired to *enter*. Plaintiff freely admits that she knew that the ice posed a danger, but that she saw the danger as surmountable and the risk apparently worth assuming in order to take part in a recreational activity. Plaintiff was not forced to confront the risk, as even she admits; she was not "trapped" in the building or compelled by extenuating circumstances with no choice but to traverse a previously unknown risk. In other words, *the danger was not unavoidable*, or even effectively so.[41] Moreover, plaintiff presented no evidence that the risk of harm associated with the ice patch was so unreasonably high

---

[40] While generally the standard applied to determine whether a condition is open and obvious is that of a reasonably prudent person, an *objective standard*, it is noteworthy in this case that plaintiff here *actually* (subjectively) recognized the hazard.

[41] It should not be difficult to see, particularly on the facts of a case such as this, how a conclusion to the contrary would all but swallow the rule regarding open and obvious hazards.

21

that its presence was inexcusable, even in light of its open and obvious nature.  Again, landowners are not charged with a duty of ensuring absolutely the safety of each person who comes onto their land, even when that person is an invitee.  Because there is no dispute that the ice constituted an open and obvious danger, and because plaintiff has not proved that the ice patch had any special aspects, plaintiff is precluded from recovering in tort as a matter of law.

## IV.  RESPONSE TO THE DISSENTS

The dissents take two separate approaches, but ultimately arrive at the same erroneous conclusion.  Justice HATHAWAY's dissent ignores this Court's modern premises liability law entirely, concluding that mere anticipation of a harm is sufficient to impose liability on a premises owner.  Justice CAVANAGH's dissent recognizes this Court's applicable jurisprudence regarding open and obvious dangers, but ultimately expresses his disagreement with that jurisprudence.  We will address these approaches in turn.

We agree with Justice HATHAWAY's general observation that anticipation of a perceived harm is material to the imposition of a duty of care given that, of course, the law does not impose liability for unanticipated or unforeseeable harms.[42]  But contrary to Justice HATHAWAY's position, it is not the *only* consideration relevant to the question

---

[42] See generally *Brown v Brown*, 478 Mich 545; 739 NW2d 313 (2007).

whether a duty of care exists.[43]  To support her view that *mere anticipation* of an injury creates, per se, a duty of care and a jury-submissible question of fact regarding liability for an open and obvious danger would be to render the open and obvious doctrine a legal nullity because harm can be anticipated from any number of common conditions.  Indeed, when could it *ever* be said that harm could not be reasonably anticipated from an open and obvious condition?  Ordinary open and obvious conditions are categorically conditions from which harm may be anticipated—that is the characteristic that gives them their special designation in the law that has historically curtailed liability for injuries resulting from them.[44]  *The small patch of ice at issue here is of the same character as those open and obvious hazards—like an ordinary pothole or flight of stairs—that this Court has repeatedly stated do not give rise to liability for a premises owner.*

Justice HATHAWAY's dissent further argues, on the basis of its erroneous belief that this Court's decision in *Quinlivan v Great Atlantic and Pacific Tea Co, Inc* controls

---

[43] See *Lugo*, 464 Mich at 525 ("Simply put, there must be something out of the ordinary, in other words, special, about a particular open and obvious danger in order for a premises possessor to be expected to anticipate harm from that condition.  Indeed, it seems obvious to us that if an open and obvious condition lacks some type of special aspect regarding the likelihood or severity of harm that it presents, it is not unreasonably dangerous.  We cannot imagine an open and obvious condition that is unreasonably dangerous, but lacks special aspects making it so.").

[44] See *Williams*, 429 Mich at 500 ("The duty a possessor of land owes his invitees is not absolute, however.  It does not extend to conditions from which an unreasonable risk cannot be anticipated or to dangers so obvious and apparent that an invitee may be expected to discover them himself.").

the outcome of this case, that this opinion ignores precedent.[45] To the contrary, *Quinlivan* merely rejected a per se rule barring liability for snow and ice conditions, and the decision in this case does not affect that holding. The per se rule rejected by *Quinlivan* is markedly different from that of the open and obvious doctrine, which, while it restricts the duty owed for such hazards, nevertheless *permits* liability in certain limited circumstances. These limited circumstances have been discussed and delineated in decisions of this Court subsequent to *Quinlivan*. While Justice HATHAWAY apparently believes that the analysis in cases involving the open and obvious doctrine begins and ends with *Quinlivan*, this opinion has taken pains to set forth the cases and principles that have marked this Court's interpretation of the open and obvious doctrine and premises liability law before *and* in the nearly 40 years since *Quinlivan*. *Quinlivan* only established a duty of care for premises owners regarding winter conditions; our opinion in this case clarifies how well-recognized exceptions to the traditional duty of care imposed on premises owners apply in these circumstances. Yet in favor of its "anticipation" theory of liability, Justice HATHAWAY's dissent ignores all this law, including this Court's "special aspects" test, which is *the* test that governs whether liability may arise from an open and obvious danger and has uncontroversially been so for quite some time.

---

[45] *Quinlivan*, 395 Mich 244.

Justice HATHAWAY's approach also fails to appreciate that whether a duty exists in a tort action is generally a question of law to be decided by the court,[46] and when a court determines that a duty was not owed, no jury-submissible question exists. Because the issue of the openness and obviousness of a hazard is an "integral part" of the question of *duty*,[47] establishing whether a duty exists in light of the open and obvious nature of a hazard is an issue within the province of the court. As discussed previously, it is only when an open and obvious hazard is in some manner *unreasonable* that there is a question of fact for the jury.[48] And as this opinion explains, unreasonableness is the touchstone of the "special aspects" test, which guides the analysis in this opinion. Again, though, because Justice HATHAWAY's dissent ignores recent caselaw concerning the open and obvious doctrine and the "special aspects" analysis entirely, it erroneously concludes that there is a question of fact for the jury to decide in this case, even though the open and obvious doctrine cuts off liability as a matter of law. To the extent that her dissent abandons the controlling premises liability framework and wishes that a different analysis

---

[46] *Maiden*, 461 Mich at 131; *Murdock v Higgins*, 454 Mich 46, 53; 559 NW2d 639 (1997)

[47] *Lugo*, 464 Mich at 516.

[48] See, e.g., *id.* at 517-518 ("[W]ith regard to open and obvious dangers, the critical question is whether there is evidence that creates a genuine issue of material fact regarding whether there are truly 'special aspects' of the open and obvious condition that differentiate the risk from typical open and obvious risks so as to create an unreasonable risk of harm, i.e., whether the 'special aspect' of the condition should prevail in imposing liability upon the defendant or the openness and obviousness of the condition should prevail in barring liability.").

25

controlled, we believe that it is Justice HATHAWAY's dissent, and not this opinion, that fails to consider Michigan law as set forth in our precedents.

Justice CAVANAGH's dissent takes issue with this opinion's application of the open and obvious doctrine in Michigan or, more specifically, it takes issue with how this doctrine has developed over time, culminating in this decision. While Justice CAVANAGH is entitled to disagree with the development of this area of the law, we believe that it offers necessary clarity and allows for the efficient resolution of this type of case by setting forth an objective and workable framework.

Contrary to Justice CAVANAGH's charge, we respectfully disagree that this opinion renders Michigan law illogical or unworkable. Justice CAVANAGH's dissent characterizes this decision as effectuating a sea-change because, he alleges, now an invitor's duty only arises at the moment an individual is compelled to confront an unavoidable hazard, and thus the law "no longer requires the invitor to prospectively anticipate whether harm will occur, despite the hazard's open-and-obvious nature."[49] With all due respect, we believe that Justice CAVANAGH's dissent misapprehends our holding. The "effectively unavoidable" component of the special aspects exception does not define a premises owner's duty as a whole. Instead, it is but one component of that doctrine that serves as one exception to the general rule precluding liability for open and obvious dangers.[50]

---

[49] *Post* at 7-8 (CAVANAGH, J., dissenting).

[50] Our opinion in this case focuses in large part on effective unavoidability only because plaintiff argues that it was the unavoidable nature of the hazard in this case that created a special aspect to the open and obvious condition.

26

With this opinion, we do not broadly erase invitors' duties or limit those duties to effectively unavoidable conditions, as Justice CAVANAGH's dissent alleges. Instead, consistent with our caselaw, we simply apply the standing rule that liability may only be imposed on invitors for an open and obvious condition when there are special aspects to the condition.[51]

Both dissents also argue that this opinion is inconsistent with the Second Restatement of Torts. We begin with the general observation that this Court has never adopted wholesale the Restatement approach. While this Court has looked to the Restatement for guidance, it is our caselaw, as developed through the years, that provides the rule of law for this State.[52] Nevertheless, it is for the precise reason that our caselaw,

---

[51] We decline to respond to the myriad hypothetical situations that Justice CAVANAGH posits in which the rules articulated in this opinion may have some application in the future. Instead, we believe that we have clearly articulated the governing principles and applicable rules to guide future courts that will have to apply these principles and rules in what are, in some cases, admittedly difficult factual scenarios. As with any other principle or rule of the common law articulated in the previous 175 years of our State's history, to the extent that the governing principles and applicable rules set forth in this case must be further refined or applied in future cases, we will confront those cases as they arise. In particular, however, because it is relevant to some of Justice CAVANAGH's hypothetical situations, we reiterate that issues arising in application of the open and obvious doctrine are to be decided using an *objective* standard—as our rejection of plaintiff's position and application of the standard in this case illustrates. See also *Lugo*, 464 Mich at 518, 523-524.

[52] No approach is perfect, and Justice CAVANAGH himself has noted that the Restatement itself "does not explicitly lay out the standard of care," *Lugo*, 464 Mich at 531 (CAVANAGH, J., concurring), and that the Restatement's approach "can be somewhat difficult to apply." *Id.* at 533.

including *Lugo* and *Bertrand v Alan Ford, Inc*,[53] has relied on the principles of the Second Restatement of Torts, which this opinion then incorporates and applies, that ultimately belies the dissents' argument that our opinion is inconsistent with the Second Restatement. Discussing the Second Restatement, this Court has summarized the guiding principles as follows:

> When §§ 343 and 343A are read together, the rule generated is that if the particular activity or condition creates a risk of harm *only* because the invitee does not discover the condition or realize its danger, then the open and obvious doctrine will cut off liability if the invitee should have discovered the condition and realized its danger. On the other hand, if the risk of harm remains unreasonable, despite its obviousness or despite knowledge of it by the invitee, then the circumstances may be such that the invitor is required to undertake reasonable precautions. The issue then becomes the standard of care and is for the jury to decide.[54]

This standard—in particular, the focus on the imposition of liability only for unreasonable dangers—is perfectly consistent with our discussion and application of the special aspects test.[55] We have a difficult time reading the Second Restatement as standing for the extraordinarily broad imposition of liability and legal propositions posited by the dissents.

In final response to the dissents, we believe it is again worth noting the key, undisputed facts of this case on which the dissents would impose potential liability on the

---

[53] *Bertrand*, 449 Mich 606.

[54] *Id.* at 611, citing and discussing 2 Restatement Torts, 2d, §§ 343 and 343A, pp 215-222.

[55] The Court's opinion in *Lugo*, responding to Justice CAVANAGH's concurrence in that case raising the same basic challenge, reasoned similarly. See *Lugo*, 464 Mich at 525-526.

premises owners. The facts of this case occurred in Michigan's Upper Peninsula, in the dead of winter. On the morning of the accident, the premises owners had cleared and salted the sidewalk before the opening of business. However, by the time plaintiff arrived at the building later that morning, a small ice patch had re-formed over a portion of the sidewalk. We know from the testimony of plaintiff herself that this ice patch was not unreasonable or unusual in some manner because she believed that she could overcome it and affirmatively attempted to do so. There are no allegations in this case of anything other than what every Michigan citizen is compelled to confront countless times every winter.

While the dissents would like to characterize this opinion as closing the courthouse door on injured persons, we are only preserving the balance our law has struck with regard to liability for known, common, ordinary dangers. Contrary to the dissents' arguments, the rationale for imposing liability here exists neither in the world of the Second Restatement nor in Michigan law. Instead, the dissents posit a regime whereby premises owners would become virtual insurers to those who enter their property. Were it to be adopted, the dissents' position that they would leave the determination regarding the scope of the duty owed for an open and obvious danger as a question for the jury would significantly reduce predictability in the law. The process by which the dissents would resolve by jury trial every claim involving an open and obvious danger would essentially render it impossible for any landowner to anticipate what harms

must be remedied in advance in order to *avoid* liability.[56] The goal of the law is not to create uncertainty whereby only a jury determines, after the fact, the scope of a defendant's duty. Rather, the goal of the law is to establish clear standards that allow citizens to ascertain the extent of their duties, liabilities, and responsibilities *before* an accident occurs. The open and obvious doctrine was created precisely to preclude suits in which the harm was obvious and should have been avoided.

## V. CONCLUSION

Our decision here reaffirms this Court's interpretation of fundamental principles of the law of premises liability. These rules balance the competing interests of landowners and those who enter their land, ensuring that while no person should be forced to endure unreasonable risks, the simple fact exists that the law compels individuals to accept personal responsibility for their well-being by avoiding apparent hazards, including those precipitated by Michigan winters. The law does not provide recovery for every harm. The "special aspects" exception permits recovery only in circumstances that present a uniquely high likelihood of harm notwithstanding a hazard's obvious nature.

The ice patch on the sidewalk that plaintiff chose to confront was open and obvious, and plaintiff has not provided evidence of special aspects of the condition to justify imposing liability on defendants despite the open and obvious nature of the

---

[56] The dissents would thus require a landowner either to keep his property in perfect condition at all times and for all people to ensure against *any* injury, or subject himself to protracted and expensive litigation as a result of injury arising from any common condition. We hardly believe that the dissents' proposed Morton's Fork represents a practical and workable framework, much less a framework compelled by our law.

danger. The judgment of the Court of Appeals is reversed in part, and this case is remanded to the Gogebic Circuit Court for entry of summary disposition in favor of the Lanctoes.

Robert P. Young, Jr.
Stephen J. Markman
Mary Beth Kelly
Brian K. Zahra

31

STATE OF MICHIGAN

SUPREME COURT

CHARLOTTE HOFFNER,

       Plaintiff-Appellee,
       Cross-Appellant,

and

BLUE CROSS BLUE SHIELD OF
MICHIGAN,

       Plaintiff-Appellee,

v                                                                    No. 142267

RICHARD LANCTOE and LORI
LANCTOE,

       Defendants-Appellants,
       Cross-Appellees,

and

PAMELA MACK, TIFFANI K. AHO, and
MOUSIE, INC., d/b/a FITNESS XPRESS,

       Defendants.

_____

CAVANAGH, J. (*dissenting*).

While I agree with the general principles expressed in Justice HATHAWAY's dissent, I write separately to elaborate on my disagreement with the majority. Today's majority opinion builds on the so-called "special aspects" doctrine by holding that "effectively unavoidable" means that the injured person must have been "compelled by extenuating circumstances with no choice but to traverse a previously unknown risk." *Ante* at 21. Because the open-and-obvious doctrine has been interpreted as establishing a

no-duty rule,[1] and because the majority erroneously decided in *Lugo v Ameritech Corp, Inc*, 464 Mich 512; 629 NW2d 384 (2001), that the special-aspects doctrine defines the *sole* exception to the open-and-obvious doctrine, today's majority opinion means that only when those unexplained extenuating circumstances arise and force a person to confront an open-and-obvious hazard does the premises possessor suddenly acquire a duty to address the dangerous condition. Thus, the majority further narrows the exceptions to the open-and-obvious doctrine to the very rarest of situations, without elaborating on when those extenuating circumstances may arise. This ill-wrought departure from our precedent immunizes premises possessors from nearly all liability arising out of their breaches of a long-recognized duty. Because the majority's relentless redefining and narrowing of the exceptions to the open-and-obvious doctrine will inevitably work to the harm of those who choose to reside in or visit Michigan, I respectfully dissent.

I. THE MAJORITY OPINION IS INCONSISTENT WITH OUR PRECEDENTS AND THE RESTATEMENT OF TORTS

I agree with Justice HATHAWAY that the majority opinion represents yet another unwarranted departure from our longstanding and well-reasoned precedents, which have historically relied on the Restatement of the Law of Torts. See, e.g., *Riddle v McLouth Steel Prod Corp*, 440 Mich 85, 92-94; 485 NW2d 676 (1992); *Ackerberg v Muskegon Osteopathic Hosp*, 366 Mich 596, 599-600; 115 NW2d 290 (1962). Based on our

---

[1] As explained in footnote 2 of this opinion, I question whether all questions related to the open-and-obvious doctrine should be characterized as relating to the *duty* of the premises possessor rather than to the standard of care.

traditional adherence to the Restatement, it is well established in our jurisprudence that an invitor owes a legal duty "'to exercise reasonable care to protect invitees from an unreasonable risk of harm caused by a dangerous condition of the land' that the landowner knows or should know the invitees will not discover, realize, or protect themselves against." *Bertrand v Alan Ford, Inc*, 449 Mich 606, 609; 537 NW2d 185 (1995), quoting *Williams v Cunningham Drug Stores, Inc*, 429 Mich 495, 499; 418 NW2d 381 (1988), citing 2 Restatement Torts, 2d, § 343, pp 215-216. The invitor's duty includes the "duty to exercise reasonable care to diminish the hazards of ice and snow accumulation" by taking "reasonable measures . . . within a reasonable time after an accumulation of ice and snow to diminish the hazard of injury to the invitee." *Quinlivan v Great Atlantic & Pacific Tea Co, Inc*, 395 Mich 244, 261; 235 NW2d 732 (1975). The sound rationale underlying this rule is that liability for injuries caused by failures to maintain property in a safe condition should rest on the person in control of the property because he or she is in the best position to prevent the injury. *Nezworski v Mazanec*, 301 Mich 43, 56; 2 NW2d 912 (1942).

The open-and-obvious doctrine, however, balances the invitor's duty to diminish the hazard of injury with the need for invitees to exercise a reasonable degree of personal responsibility for their own safety. Thus, it has been said that an invitor generally "'owes no duty to protect or warn the invitee'" of dangers that are "'known to the invitee or are *so obvious* that the invitee might reasonably be expected to discover them . . . .'" *Mann v*

*Shusteric Enterprises, Inc*, 470 Mich 320, 339; 683 NW2d 573 (2004) (CAVANAGH, J.,

concurring in part and dissenting in part), quoting *Riddle*, 440 Mich at 96.[2]

In turn, however, the Restatement approach recognizes exceptions to the open-

and-obvious doctrine. Particularly relevant to this case is 2 Restatement Torts, 2d, §

343A(1), p 218, which provides that a possessor of land is not relieved of the duty to

protect or warn of known or obvious dangers if "the possessor should anticipate the harm

despite such knowledge or obviousness." The comments on § 343A(1) state, in pertinent

part:

> There are, however, cases in which the possessor of land can and
> should anticipate that the dangerous condition will cause physical harm to
> the invitee notwithstanding its known or obvious danger. In such cases the
> possessor is not relieved of the duty of reasonable care which he owes to
> the invitee for his protection. *This duty may require him to warn the*
> *invitee, or to take other reasonable steps to protect him, against the known*

---

[2] I will accept, but only for purposes of this dissent, that questions related to the open-and-obvious doctrine relate to the premises possessor's duty. As my previous positions indicate, however, questions about the openness and obviousness of a hazard might be better designated as related to the standard of care. See *Lugo*, 464 Mich at 531-541 (CAVANAGH, J., concurring); *Riddle*, 440 Mich at 118-122 (LEVIN, J., dissenting).

I will not attempt to resolve this issue here because what matters is that Michigan courts currently consider the open-and-obvious doctrine to be solely a question of duty. See *Lugo*, 464 Mich at 516 (TAYLOR, J.). This case, however, shows the danger of classifying all questions related to the open-and-obvious doctrine as questions of duty because doing so removes questions of fact from the jury's consideration and encourages courts to grant summary disposition to defendants when there may be genuine issues of material fact concerning whether a danger is open and obvious and, if so, whether the premises possessor still had a duty to address the hazard because the premises possessor should have anticipated the harm. Indeed, the majority's entire special-aspects test was created to provide a framework for courts deciding defendants' motions for summary disposition. See *id.* at 524-525 ("[W]e believe that this 'special aspects' inquiry serves to concretely focus trial courts on the showing that must be made in evaluating motions for summary disposition in this context.").

4

*or obvious condition or activity, if the possessor has reason to expect that the invitee will nevertheless suffer physical harm.* [*Id.* at § 343A(1) comment *f*, p 220 (emphasis added).]

In *Lugo*, however, the majority created its special-aspects test—relying solely on the special aspects of a condition that may make it unreasonably dangerous—and began the systematic rewriting of Michigan premises-liability law in a way that narrows the exceptions to the open-and-obvious doctrine. *Lugo*, 464 Mich at 518-520.[3] As I noted in *Lugo*, the exceptions to the open-and-obvious doctrine cannot "be simply summarized in terms of whether 'special aspects' of a condition make the risk of harm unreasonably dangerous." *Id.* at 527 (CAVANAGH, J., concurring). Rather, while the "special aspects of a particular condition may be relevant to a determination whether liability should be imposed . . . , consideration of special aspects should be made in the context of the Restatement test." *Id.* at 542; see, also, *Mann*, 470 Mich at 336 (CAVANAGH, J., concurring in part and dissenting in part) ("I remain committed to the view that the majority's singular [special aspects] approach is wrong and inconsistent with Michigan's premises liability jurisprudence.").

---

[3] The *Lugo* majority erroneously seized on *Bertrand*'s use of the term "special aspects" to describe some aspect of a stairway that made it unreasonably dangerous, despite the hazard being open and obvious. It was never my intention that this simple term would be used in a later case to form the basis for an increasingly narrow test designed to apply to all exceptions to the open-and-obvious doctrine. As I stated in *Lugo*:

> [W]hile "special aspects" may be considered in determining whether liability should be suspended, the existence or absence of special aspects in a particular case will not necessarily be outcome determinative. Instead, pursuant to the Restatement, courts must focus on whether an unreasonable danger is presented, whether harm should be anticipated, and whether the duty of care has been breached. [*Lugo*, 464 Mich at 543 (CAVANAGH, J., concurring).]

In discussing whether a special aspect makes a condition unreasonably dangerous, the *Lugo* majority gave the example of a puddle of water covering the floor in front of the only available exit to a building. *Lugo*, 464 Mich at 518.[4] Because a customer wishing to leave the store must cross the water, the majority noted that the condition was "effectively unavoidable." *Id.*[5]

In the years since *Lugo*, there has been considerable debate about what would make a condition effectively unavoidable, and some jurists have interpreted "effectively unavoidable" as being synonymous with "effectively trapped." See *Joyce v Rubin*, 249 Mich App 231, 242; 642 NW2d 360 (2002); *Robertson v Blue Water Oil Co*, 268 Mich App 588, 594; 708 NW2d 749 (2005); *Preston v Loving Care Flowers, Inc*, unpublished opinion per curiam of the Court of Appeals, issued December 13, 2011 (Docket No. 301241), p 2. Indeed, in this case the Lanctoes argued that plaintiff was not effectively trapped because she was trying to enter—not exit—the fitness club.

---

[4] The majority opinion repeats that "neither a common condition nor an avoidable condition is uniquely dangerous." *Ante* at 11. This seems inconsistent with *Lugo*'s example of a puddle of water blocking the only exit to a building as being effectively unavoidable. Puddles of water in front of exits are common in Michigan as patrons track snow in when entering a building. It seems that if a mere puddle of water can be uniquely dangerous, then an icy patch of sidewalk is doubly so. Yet both are common conditions.

[5] The majority also provided the example of "an unguarded thirty foot deep pit in the middle of a parking lot" as an open-and-obvious hazard that was unreasonably dangerous because it bore the "special aspect" of imposing "an unreasonably high risk of severe harm." *Lugo*, 464 Mich at 518. The instant case relates only to *Lugo*'s "effectively unavoidable" illustration because, in order to enter the health club, plaintiff had to cross a patch of visible snow and ice on the sidewalk adjacent to the only entrance to the facility.

Today, the majority continues to dismantle the Restatement approach by holding that "effectively unavoidable" means that the injured person must have been "compelled by extenuating circumstances with no choice but to traverse a previously unknown risk." *Ante* at 21. In other words, "effectively unavoidable" means *absolutely* unavoidable: the individual must have *no alternative* but to hazard the danger. Thus, there is essentially nothing left of the premises possessor's historical duty to clear ice and snow or the exceptions to the open-and-obvious doctrine because it will be incredibly rare that an injured person will be able to show that they were "absolutely compelled" to encounter an open-and-obvious danger. I find today's holding to be repugnant to the traditional jurisprudence of this Court and a grave disservice to Michigan's citizens and visitors.

## II. THE MAJORITY OPINION CREATES AN ILLOGICAL AND UNWORKABLE STANDARD

While the majority seems to be attempting to settle the confusion about the meaning of "effectively unavoidable," the new definition merely continues the narrowing of the traditional exceptions to the open-and-obvious doctrine by creating an illogical and unworkable standard. This is so because, from this point forward, a premises possessor's duty to warn of or protect against an open-and-obvious hazard will arise only at the moment an individual is "compelled by extenuating circumstances with no choice but to traverse a previously unknown risk." *Ante* at 21.[6] In other words, an invitor's duty no

---

[6] As discussed in this opinion, the open-and-obvious doctrine has been interpreted as a no-duty rule. Thus, in the context of visible hazards blocking the only available ingress or egress, the new rule could be stated as follows: The invitor owes no duty to warn of or protect against an open-and-obvious hazard unless the invitee is compelled by extenuating circumstances with no choice but to traverse a previously unknown risk.

7

longer requires the invitor to prospectively anticipate whether harm will occur, despite the hazard's open-and-obvious nature. See Restatement, § 343A(1), p 218. Indeed, the duty will not even arise until some extenuating circumstance—like a fire inside a building necessitating evacuation—forces individuals to choose between the harms of traversing versus not traversing the risk.[7] Such a rule is nonsensical because it imposes the duty on premises possessors when it will generally be too late to do anything to address the hazard. Essentially, at the moment the building catches on fire the premises possessor would acquire the duty to run outside and salt the visibly slippery sidewalk he or she chose to ignore earlier that morning.

In contrast to the majority's position, the Restatement approach is far more workable and logical. It requires the premises possessor to take steps to address the hazard when the premises possessor should anticipate that individuals will be exposed to harm from the risk, despite its open-and-obvious nature. A patch of icy sidewalk blocking the only entrance to a fitness club is a perfect example. If the premises possessor expects patrons to enter the business he or she holds open to the public, the premises possessor should expect that they will confront the hazard despite its open-and-obvious nature.

---

[7] The majority's new rule thus shifts the focus from the nature of the condition to the choice made by the injured person who was absolutely compelled to confront the hazard. This seems inconsistent with *Lugo*'s statement that courts are to remain focused on the nature of the hazard. *Lugo*, 464 Mich at 523-524 ("Accordingly, it is important for courts in deciding summary disposition motions by premises possessors in 'open and obvious' cases to focus on the objective nature of the condition of the premises at issue, not on the subjective degree of care used by the plaintiff.").

Indeed, the Restatement provides an example in which a person is injured after falling on a visibly "slippery waxed stairway" that provides the *sole access point* to the person's office and "[h]er only alternative to taking the risk was to forgo her employment." Restatement, § 343A(1), illustration 5, p 221. In that illustration, the premises possessor did not escape liability merely because the hazard was open and obvious. Thus, the Restatement approach requires the premises possessor to take steps to address the hazard *at a time when he or she can prevent the harm*—not after some unforeseen and unforeseeable extenuating circumstances arise. Unlike the majority's new definition of "effectively unavoidable," the Restatement approach is prospective—requiring the premises possessor to reasonably anticipate probable harms—not retrospective and arising after the fact.

Unlike the special-aspects test, the Restatement approach serves well the citizens of Michigan who live in a climate that is, as the majority tutors, "prone to winter." *Ante* at 2. It is precisely *because* Michigan experiences wintry conditions that premises possessors have a duty to take reasonable measures within a reasonable time to address the hazards of ice and snow. Indeed, such a rule would make no sense in a climate that does not experience winter. The premises possessor—not the person who must go about his or her daily business during the winter—is in the best position to remedy hazardous conditions on the premises. *Nezworski*, 301 Mich at 56.[8]

---

[8] See, also, Restatement, § 343A(2), comment g, p 221 (noting that "the fact that premises have been held open to the visitor, and that he has been invited to use them, is always a factor to be considered, as offering some assurance to the invitee that the place has been prepared for his reception, and that reasonable care has been used to make it safe").

9

## III. THE MAJORITY FAILS TO ADEQUATELY EXPLAIN ITS NEW STANDARD

Through a smattering of iterations, the majority instructs that the invitee must be "compelled by extenuating circumstances with no choice but to traverse a previously unknown risk," *ante* at 21, "inescapably required to confront under the circumstances," "*unavoidably compelled*," *ante* at 3, "*required* or *compelled* to confront a dangerous hazard," *ante* at 17, and "forced to confront the risk," *ante* at 21, but fails to provide guidance about what types of circumstances would suffice. Specifically, the majority fails to state whether these extenuating circumstances must arise externally to and independent of the invitee or whether the extenuating circumstances of the particular individual suffice. Further, the majority opinion offers no guidance about whether it matters if an invitee is entering or exiting a property.

Presumably, a fire or a rampant gunman in a building would constitute extenuating circumstances sufficient to force the fleeing occupants to hazard a known or obvious risk. In that case, because they are exiting the building, they would be trapped by a patch of ice blocking the only exit.[9] As I noted, however, it makes no sense to say that the premises possessor's duty arises when the shots ring out or the building bursts into flames, and I do not see how a premises possessor could ever anticipate such extenuating circumstances. While the majority opinion reiterates that "issues arising in application of

---

[9] Although at least one iteration of the majority's new rule would also seem to require that the risk be "previously unknown." *Ante* at 21. Whether the risk was actually known or should have been known because it was open and obvious, the majority opinion makes it clear that effective unavoidability means that the injured person had no choice but to hazard the risk. If one has no choice but to cross the hazard, I cannot see why it matters whether he or she previously knew of the risk or not.

10

the open and obvious doctrine are to be decided using an *objective* standard . . . ," *ante* at 27 n 51, this statement fails to provide guidance on the extenuating circumstances that may be subjectively particular to an individual, yet would objectively compel a reasonable person under the same circumstances to confront an open-and-obvious hazard. For example, consider the situation of a person suffering a severe medical emergency who is confronted with an icy patch blocking the sole entrance to the hospital emergency room or an individual who must suddenly enter or exit a building to come to the aid of a family member suffering a medical emergency. What about a probationer who must hazard the icy patch blocking the sole entrance to a drug-testing center in order to avoid violating his or her probation? In that case the probationer must weigh the risk of crossing against the risk of violating probation and going to jail. In each of these examples, the extenuating circumstance is specific to the individual—and therefore subjective—yet a reasonable person in that same situation would feel compelled to traverse the known or obvious hazard.

While I could provide endless examples of objective and subjective extenuating circumstances that would force a person to choose between braving or avoiding a hazard, my point is that the majority's new definition of "effectively unavoidable" only confuses the matter more and pushes our law further from the Restatement and our own precedent. It also shifts the focus from the objective nature of the hazardous condition to the subjective choice an invitee must make when deciding to cross or not cross the hazard. Courts and practitioners will struggle with these thorny questions in the wake of today's opinion, none of which would arise if we were to return to the Restatement approach.

11

Contrary to the majority's assertion, I do not "posit a regime whereby premises owners would become virtual insurers to those who enter their property." *Ante* at 29. This statement would only be true if one assumes that in *every* premises-liability case that reaches a jury, the jury *automatically* decides in favor of the injured invitee. Rather, I have confidence in our jury system and a jury's ability to rationally decide a case under the law.[10] Were this case to survive summary disposition, the jury might very well find that the Lanctoes did not breach the standard of care because they took reasonable measures within a reasonable time to address the icy condition on the sidewalk, or that although there was a breach of the duty, that breach was not the proximate cause of the harm to plaintiff.[11] I merely posit an approach that is consistent with the pre-*Lugo*

[10] Despite its professions of adherence to the law, the only "predictability" the majority seeks to add to the law is the certainty of summary disposition for defendants in open-and-obvious cases. As I have pointed out, a premises possessor has little chance of predicting the possible extenuating circumstances that might arise and force an individual to choose between the risks of crossing a hazard versus the risks of not crossing. However, a premises possessor *can* predict with relative ease that invitees will proceed to encounter even an open-and-obvious hazard when it is blocking the only available entrance to the invitor's business.

Further, I have not espoused a position that would require a landowner to keep his or her property in perfect condition at all times for all people. See *ante* at 30 n 56. Reasonableness—not perfection—is the standard by which a premises possessor's duty is measured. And while I appreciate the majority's introduction of Archbishop of Canterbury John Morton's infamous medieval fork, a Morton's Fork is a choice between two equally unpleasant alternatives. I do not think that asking a premises possessor to cast about a little Morton's Salt to make the only approach to a business *reasonably* safe qualifies as an equally unpleasant alternative to potential liability for injuries. Rather than being a negative alternative, the premises possessor's duty is a beneficial, protective measure imposed to lessen the possibility of injuring invitees and, hence, to avoid the imposition of liability.

[11] Deposition testimony indicates plaintiff suffered a fractured T12 vertebra that required surgery, persistent nerve damage, and long-term pain.

jurisprudence of this Court and would allow a premises possessor's ultimate liability in a case such as this to be decided by a jury of Michigan's citizens.

## IV. APPLICATION

Under the Restatement approach and this Court's historical jurisprudence, I would hold that the Court of Appeals did not err when it affirmed the trial court's ruling that summary disposition was not appropriate in regard to defendants Richard and Lori Lanctoe. Fitness Xpress was a health club held open to the general public, and plaintiff was invited to make use of the facility. The Lanctoes had a duty to clear the ice and snow hazard in front of the only entrance to the facility, and plaintiff had the reciprocal right to expect that reasonable care would be taken to make safe the only approach available to invitees wishing to make use of the facility. Despite the open-and-obvious nature of the hazard and the fact that plaintiff knew of the risk, the Lanctoes should have anticipated that all customers entering the facility through the sole approach to the front door would be at risk of injury.

## V. CONCLUSION

Today's majority opinion creates an illogical and unworkable rule that will serve only to bar the courthouse doors to Michigan's injured invitees. Rather than clarifying the law, the majority opinion creates a host of unanswered questions that will create confusion as courts and practitioners attempt to find the answers. Further, by reducing the invitor's duty to the very rarest of situations involving extenuating circumstances, the majority opinion also reduces the beneficial incentives for Michigan's business owners to take reasonable measures to protect against ice and snow hazards on their property. I

13

would return this Court's jurisprudence to that of the Restatement. Accordingly, I respectfully dissent.

> Michael F. Cavanagh
> Marilyn Kelly

STATE OF MICHIGAN

SUPREME COURT

CHARLOTTE HOFFNER,

       Plaintiff-Appellee,
       Cross-Appellant,

 and

BLUE CROSS BLUE SHIELD OF
MICHIGAN,
        Plaintiff-Appellee,

                                 No. 142267

v

RICHARD LANCTOE and LORI
LANCTOE,

       Defendants-Appellants,
       Cross-Appellees,

and

PAMELA MACK, TIFFANI K. AHO, and
MOUSIE, INC., d/b/a  FITNESS XPRESS,

       Defendants.

HATHAWAY, J. (*dissenting*).

     I join Justice CAVANAGH in his well-articulated criticisms of the majority's

conclusion that Richard and Lori Lanctoe owed no duty to plaintiff in this case involving

a fall on a natural accumulation of ice and snow.[1]  While the majority bemoans the fact

---

[1] References in this opinion to "plaintiff" are to Charlotte Hoffner and not to her medical insurer, Blue Cross Blue Shield of Michigan, which intervened as a party plaintiff.

that I do not thoroughly discuss the past versions of its "special aspects" doctrine, I agree with and will not repeat Justice CAVANAGH'S cogent and insightful criticisms with regard to this ever-evolving and elusive doctrine. I write separately to express my consternation at how far this latest version of the doctrine strays from binding precedent in this state.

In this latest version, the majority holds that the "special aspects" exception to the open and obvious doctrine only permits recovery in circumstances that present a uniquely high likelihood of harm. The majority further holds that because plaintiff was not "trapped" in a building or "compelled by extenuating circumstances with no choice but to traverse a previously unknown risk," the danger was not unavoidable or even "effectively" so. I disagree because the majority decision not only fails to follow binding precedent, it also disregards the open and obvious doctrine as set forth in 2 Restatement Torts, 2d, §§ 343 and 343A, pp 215-222. Moreover, the decision diminishes the role of juries in favor of judicial fact-finding, in direct contravention of the specific mandate of the Michigan Constitution.

First and foremost, as the majority acknowledges, *Quinlivan v Great Atlantic & Pacific Tea Co, Inc*[2] remains binding precedent in this state.[3] *Quinlivan* rejected the notion that Michigan's northern geographic location somehow relieves a premises owner of duties owed to an invitee. In doing so, this Court looked to the common law of the state of Alaska for guidance. *Quinlivan* quoted Alaska's approach with approval:

---

[2] *Quinlivan v Great Atlantic & Pacific Tea Co, Inc*, 395 Mich 244; 235 NW2d 732 (1975).

[3] See *ante* at 11-12.

"Alaska's climatic conditions do not metamorphize all risks arising from ice and snow conditions into reasonable risks for the business invitee. Nor are we persuaded by appellee Carr's policy argument that in Alaska it would result in unreasonable costs to the private-commercial possessor of land to require the possessor to clear ice and snow, or otherwise remedy conditions which amount to unreasonable risks of harm to its business invitees. The mere fact that snow and ice conditions prevail for many months throughout various locations in Alaska is not in and of itself sufficient rationale for the insulation of the possessor of land from liability to his business invitee. Nor do such climatic conditions negate the possibility that the possessor should have anticipated harm to the business invitee despite the latter's personal knowledge of the dangerous snow and ice conditions or the general obviousness of such conditions.

"What acts will constitute reasonable care on the part of the possessor of land will depend on the particular variables of each case. Our decision today does not represent the adoption of a flat requirement that the possessor's duty requires that he attempt to keep his land free of ice and snow. Dependent on the circumstances, reasonable care on the possessor's part could be demonstrated by other reasonable acts such as the sanding of the area, or application of salt."[4]

Moreover, *Quinlivan* acknowledged the rigorous duties owed an invitee.

*Quinlivan* held that a premises owner owes a duty to an invitee to protect him or her from

the hazards of *natural* accumulations of ice and snow. The Court held:

In our view the Alaska Court has appropriately conceived the legal duty owed by the invitor to the invitee. As that Court found the basis for its decision rooted in pre-existing Alaska law, we find that the basis for our decision is grounded in cases such as *Torma* [v *Montgomery Ward & Co*, 336 Mich 468; 58 NW2d 149 (1953)], which have recognized the rigorous duty owed an invitee. To the extent pre-existing case law authority indicated that the natural accumulation rule applied in an invitor-invitee context, that authority is overruled. *For reasons adequately stated by the Alaska Court, we reject the prominently cited notion that ice and snow hazards are obvious to all and therefore may not give rise to liability. While the invitor is not an absolute insurer of the safety of the invitee, the invitor*

---

[4] *Quinlivan*, 395 Mich at 259-260, quoting *Kremer v Carr's Food Center, Inc*, 462 P2d 747, 752 (Alas, 1969).

3

*has a duty to exercise reasonable care to diminish the hazards of ice and snow accumulation.* The general description of the duty owed appearing in the Restatement is a helpful exposition of the duty described in *Torma.* As such duty pertains to ice and snow accumulations, it will require that reasonable measures be taken within a reasonable time after an accumulation of ice and snow to diminish the hazard of injury to the invitee.[5]

Thus, *Quinlivan* soundly rejected the previously held notion that ice and snow hazards are obvious to all and therefore may not give rise to liability. While the Court acknowledged that a premises owner is not an absolute insurer of the safety of an invitee, the Court recognized that a premises owner has a duty to exercise reasonable care to diminish the hazards of ice and snow accumulation. In order to fulfill that duty, a premises owner must take reasonable measures, within a reasonable time after an accumulation of ice and snow, to diminish the hazard of injury to invitees. As *Quinlivan* clearly opined, the question is one of reasonableness. The premises owner has a duty to take reasonable steps to diminish the hazard of ice and snow, and invitees have a duty to take reasonable actions for their own safety. Today's decision fails to apply this analysis. While the majority cites *Quinlivan* as controlling precedent, it applies an analysis that ignores these principles. If the majority intends to overrule *Quinlivan*, it should do so in a forthright manner rather than claim that it is merely "clarifying" the law.

Moreover, to the extent that the open and obvious doctrine plays any role in the discussion of the Lanctoes' duty in this case, §§ 343 and 343A of the Second Restatement of Torts form the basis for Michigan's open and obvious danger caselaw, and I see no reason to abandon the principles set forth in those sections. The Restatement contains

---

[5] *Quinlivan*, 395 Mich at 260-261 (emphasis added).

4

exceptions to the so-called "no-duty" rule that the open and obvious doctrine creates. Rather than address these exceptions, the majority focuses on "special aspects." However, as Justice CAVANAGH has astutely observed, the Restatement contains exceptions to the no-duty rule, and "these exceptions cannot be conveniently summarized by a 'special aspects' analysis."[6] Instead, the exceptions as set forth in the Restatement need to be maintained as part of Michigan's caselaw.

The relevant sections of the Restatement provide:

§ 343. Dangerous Conditions Known to or Discoverable by Possessor

A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger.

\* \* \*

§ 343 A. Known or Obvious Dangers

(1) A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.

---

[6]*Mann v Shusteric Enterprises, Inc*, 470 Mich 320, 337; 683 NW2d 573 (2004) (CAVANAGH, J., concurring in part and dissenting in part).

(2) In determining whether the possessor should anticipate harm from a known or obvious danger, the fact that the invitee is entitled to make use of public land, or of the facilities of a public utility, is a factor of importance indicating that the harm should be anticipated.[7]

While there is no absolute duty to warn invitees of known or obvious dangers, important exceptions emerge from the Restatement that limit the application of this general rule. The primary exception is that a premises owner is not liable unless he or she "*knows or by the exercise of reasonable care*" would discover or realize that invitees "*will fail to protect themselves against*" the danger or "*unless the possessor should anticipate the harm despite such knowledge or obviousness.*"[8] Thus, under the Restatement, the premises owner retains a duty to protect invitees and may still be held liable when the harm could be reasonably anticipated despite the fact that the danger is open and obvious. This exception was acknowledged in *Riddle v McLouth Steel Products Corp*:

> Moreover, the "no duty to warn of open and obvious danger" rule is a defensive doctrine that attacks the duty element that a plaintiff must establish in a prima facie negligence case. A negligence action may only be maintained if a legal duty exists which requires the defendant to conform to a particular standard of conduct in order to protect others against unreasonable risks of harm. If the plaintiff is a business invitee, the premises owner has a duty to exercise due care to protect the invitee from dangerous conditions. However, where the dangers are known to the invitee or are so obvious that the invitee might reasonably be expected to discover them, an invitor owes no duty to protect or warn the invitee *unless he should anticipate the harm despite knowledge of it on behalf of the invitee.*

---

[7] 2 Restatement Torts, 2d, §§ 343 and 343A, pp 215-216, 218 (emphasis omitted).

[8] *Id.* at pp 215, 218 (emphasis altered).

6

Once a defendant's legal duty is established, the reasonableness of the defendant's conduct under that standard is generally a question for the jury. The jury must decide whether the defendant breached the legal duty owed to the plaintiff, that the defendant's breach was the proximate cause of the plaintiff's injuries, and thus, that the defendant is negligent.

If, for example, the dangerous conditions on the premises are hidden or latent, the premises owner is obliged to warn the invitee of the dangers. Defendant's failure to warn under these circumstances may indicate a breach of the legal duty owed plaintiff. *If the conditions are known or obvious to the invitee, the premises owner may nonetheless be required to exercise reasonable care to protect the invitee from the danger.* What constitutes reasonable care under the circumstances must be determined from the facts of the case. While the jury may conclude that the duty to exercise due care requires the premises owner to warn of a dangerous condition, there is no absolute duty to warn invitees of known or obvious dangers.[9]

Additionally, in applying this exception, an important principle emerges from the language of the Restatement. The Restatement clearly provides that a premises owner owes a heightened duty to *anticipate* possible harm to invitees. Section 343A provides that "[i]n determining whether the possessor should anticipate harm from a known or obvious danger, the *fact that the invitee is entitled to make use* of public land . . . *is a factor of importance indicating that the harm should be anticipated.*"[10] Thus, when a person is an invitee entitled to use the premises, his or her invitee status is a *factor of importance indicating* that the premises owner should have anticipated the harm. This principle clearly recognizes the increased duty that the premises owner owes to an invitee and that the mere status as an invitee serves as an important factor indicating that the

_____

[9] *Riddle v McLouth Steel Prod Corp*, 440 Mich 85, 95-97; 485 NW2d 676 (1992) (emphasis added) (citations omitted).

[10] 2 Restatement Torts, 2d, § 343A, p 218 (emphasis altered).

7

premises owner should have anticipated the harm. This principle requires that the premises owner anticipate harm that might occur to an invitee. It is reasonable to assume that customers will use entrances open to the public during business hours, and a premises owner is thus duty-bound to anticipate harm that might come to the business invitee who uses those entrances. The majority fails to recognize this important concept and, instead, it fashions an ill-conceived and erroneous set of rules for the application of the open and obvious doctrine.

Turning to the application of the law to this case, there is no question that the majority recognizes the dangers presented by ice and snow.[11] There is also no question that plaintiff was a business invitee who was entitled to use the premises by virtue of the membership that she bought from Fitness Xpress. The fitness facility was open for plaintiff to use and enjoy during winter months. Plaintiff fell on ice and snow in front of the only entrance to Fitness Xpress. Under the lease Fitness Xpress had signed with the Lanctoes, who owned the property, the Lanctoes were responsible for snow removal. Given these circumstances, it would not be unreasonable for a jury to find that the Lanctoes should have anticipated that plaintiff would have failed to protect herself from the hazard presented by the ice and snow because there was no other method of public ingress to and egress from the business. Nor would it be unreasonable for a jury to find that plaintiff did not perceive or recognize the hazard. Conversely, a jury could also

---

[11] This recognition is clearly noted in the majority's statement that "[u]nfortunately, the accumulation of snow, ice, and other slippery hazards on surfaces regularly traversed by the citizens of this state results in innumerable mishaps and injuries each year." *Ante* at 2.

8

reasonably conclude that the Lanctoes took appropriate steps to diminish the hazard or that plaintiff did not take appropriate actions to protect her own safety.

Most importantly, however, these are questions of fact for the trier of fact to decide and are not properly decided by the court on a motion for summary disposition or on appellate review.[12] The right to trial by jury is a right protected by our Michigan Constitution.[13] When questions of fact exist, those questions are properly decided by the jury.[14] Thus, this Court not only errs by holding that the case is to be decided as a matter of law, the decision diminishes the role of juries, in favor of judicial fact-finding, in direct contravention of the specific mandates of the Michigan Constitution.

Finally, I share Justice CAVANAGH'S concern that today's holding is "repugnant to the traditional jurisprudence of this Court and a grave disservice to Michigan's citizens and visitors."[15] Accordingly, I dissent.

> Diane M. Hathaway
> Marilyn Kelly

---

[12] See *Nowland v Rice's Estate*, 138 Mich 146, 148; 101 NW 214 (1904); *In re Stebbins Estate*, 94 Mich 304, 307-308; 54 NW 159 (1892).

[13] Const 1963, art 1, § 14.

[14] *Nowland*, 138 Mich at 148; *Stebbins*, 94 Mich at 308.

[15] *Ante* at 7.

9